Rebekah C. Millard, OSB #121199
rmillard@freedomfoundation.com
James G. Abernathy, OSB #161867
jabernathy@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA  98507
Tel: 360.956.3482
Fax: 360.352.1874

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **STACI TREES**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503**, a labor organization; **OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES;** and **KATY COBA,** in her official capacity as Director of the Oregon Department of Administrative Services,<br><br>Defendants. | Case No. 6:21-cv-468<br><br>**COMPLAINT**<br><br>**Violation of Civil Rights; Fraud; Federal and State civil RICO**<br><br>**Demand for Jury Trial** |

PAGE 1 – COMPLAINT



## INTRODUCTION

1.      In the summer of 2018, Plaintiff Staci Trees ended her membership in the labor union Service Employees International Union Local 503 ("SEIU 503"). She sent an email to SEIU 503 stating her resignation of membership, but SEIU 503 did not respond. In December 2020, Ms. Trees finally succeeded in ending her union membership after sending a second resignation of membership to SEIU 503.

2.      SEIU 503 responded to Ms. Trees' second resignation letter by stating that she could resign membership but could only end the automatic deduction of union dues and assessments from her paychecks in the month of February 2021. SEIU 503 justified this restriction by claiming Ms. Trees signed a membership card dated March 22, 2016 that restricted her ability to end deductions to a narrow "window" period occurring only once a year. *See* Exhibit C. However, Ms. Trees did not sign the 2016 membership card.

3.      Ms. Trees brings this action alleging the following: (i) violation of her First Amendment right to be free of compelled speech and association, and her right to due process of law pursuant to under 42 U.S.C. § 1983; (ii) for common law fraud against SEIU 503; and (iii) Racketeering Influenced and Corrupt Practices Act (RICO) violations under 18 U.S.C. § 1964(c), and ORS 166.715 to 166.735. She seeks compensatory damages, refund or restitution and treble damages of all unlawfully seized money, nominal damages for the violation of her First Amendment rights, punitive damages, reasonable attorneys' fees, and any other relief the Court deems just and proper. Because of the ongoing threat to her rights, Plaintiff seeks declaratory and injunctive relief prohibiting Defendants' illegal and unconstitutional conduct in taking money out of her wages for union dues without her consent or authorization.

PAGE 2 – COMPLAINT

## JURISDICTION AND VENUE

4.      This action arises under federal law, including the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the Constitution of the United States, particularly the First Amendment as incorporated against the States by the Fourteenth Amendment. This action also arises, in part, under federal RICO law, 18 U.S.C. 1961, *et seq*.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and 18 U.S.C. 1964(a). This Court has supplemental jurisdiction over state law claims presented in this matter pursuant to 28 U.S.C. § 1367, because the claims are part of the same nucleus of operative fact as the federal constitutional claims in this action, and they do not raise novel or complex issues of state law and do not substantially predominate over the federal claims. There are, further, no exceptional circumstances compelling this Court to decline the state law claims.

6.      This action is an actual controversy in which Plaintiff seeks a declaration of her rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201-2202, this Court may declare the rights of Plaintiff and grant further necessary and proper relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims arise in this judicial district and Defendants operate and do business in this judicial district.

8.      Because a substantial part of the events giving rise to these claims occurred in counties covered by the Eugene Division, assignment to that Division is proper. L.R. 3-2.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

## PARTIES

9.       Plaintiff Staci Trees is a public employee who lives in Deschutes County, Oregon, and who works for Oregon Department of Transportation ("ODOT"). Ms. Trees is in a bargaining unit represented by SEIU 503. Her wages are paid by the Oregon Department of Administrative Services ("DAS").

10.      Defendant SEIU 503 has its Oregon state headquarters at 1730 Commercial St. SE, Salem, OR 97302. It is a statewide union which is the exclusive representative of Plaintiff's designated bargaining unit and, as a party to the Collective Bargaining Agreement ("CBA") between SEIU 503 and the Department of Administrative Services, negotiated for and agreed to a CBA provision that requires the State to deduct dues from Plaintiff's wages.

11.      Defendant Oregon Department of Administrative Services, whose address is at 155 Cottage St. NE # U90, Salem, OR 97301, is the state agency responsible for administering wages to state employees. Katy Coba is director of the Oregon Department of Administrative Services. Ms. Coba is sued in her official capacity.

## FACTS

12.      Ms. Trees began her employment with ODOT in 2009.

13.      On October 5, 2009, Ms. Trees signed a membership card which authorized ODOT to deduct union dues from her wages and disburse them to SEIU 503. The 2009 card did not limit Ms. Trees' ability to end her membership. The card authorized ODOT to deduct dues and disburse them to SEIU 503 "unless notified by me [Trees] in accordance with any union security agreement in effect." Exhibit A.

14.      Ms. Trees was not informed about any security agreement that might limit her



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

ability to end her membership.

15.     According to information and belief, the only agreement in effect at the time Ms.
Trees signed her card stated as follows: "Upon written notice from the employee, payroll deduction
for monthly Union dues will cease." Exhibit B (2009-2011 CBA Section 15(a)).

16.     On July 25, 2018, Ms. Trees sent an email to SEIU 503 at the following email
address: salem@seiu503.org. This email address is posted on SEIU 503's member benefits website
https://seiustatebenefits.com/ under the title "Member Resource Center." In the email, Ms. Trees
resigned her union membership and objected to the payment of any union dues. SEIU 503 never
responded to her email.

17.     From July 2018 through February 2021, DAS continued to deduct dues in or near
the amount of $92.82 plus $2.75 from Ms. Tree's paychecks each month and distribute the same
to SEIU 503.

18.     The $2.75 assessment is designated by SEIU 503 for electoral political purposes,
including ballot initiatives. The purpose of the assessment was not explained to Ms. Trees, nor did
she consent to it.

19.     In December 2020, Ms. Trees again resigned her union membership and objected
to the deduction of any union dues by a written request to SEIU 503.

20.     On December 28, 2020, Ms. Trees received an emailed response from SEIU 503
Member Assistance Representative, Robin Fisher. The email indicated that SEIU 503 had received
Ms. Trees' written communication but did not indicate whether SEIU 503 would honor her
resignation. Fisher stated, *inter alia*, "We would love to answer any questions you may have, go
over how dropping your union membership will affect your benefits, and when your dues would
end should you choose to cancel your membership now."

PAGE 5 – COMPLAINT

21.    Ms. Trees responded by email the next morning, reiterating her request to resign her membership and asking that her request be honored.

22.    Fisher responded with the following:

Hello Staci,
Thank you for your response. When you sign up to be a member of the union, you are agreeing to pay dues in a one year contract that renews unless cancelled by the renewal period. The end of your contract period is February 6th, 2021, and you will continue to see due deductions from your paycheck until that time. After your February paycheck, you should no longer have dues deducted from your check. Please let me know if you have any questions.

23.    Ms. Trees never agreed to pay dues for a one-year contract and was unaware of any "renewal period," as this was not included in the membership card she signed. Ms. Trees responded to Fisher, asking for a copy of the agreement to which Fisher referred.

24.    Ms. Trees also asked her payroll office if they could assist her with ending payment of union dues, and whether they had copies of any applicable contract or agreement that would force her to remain a member.

25.    The payroll office referred Ms. Trees back to SEIU 503, stating: "We take orders from the union about when to stop deducting dues."

26.    SEIU 503 sent Ms. Trees copies of two (2) membership cards it claims she signed: the first was dated October 5, 2009, which Ms. Trees acknowledges that she signed (*see* Exhibit A); and the second card was dated March 22, 2016 and contained language in the fine print limiting a member's ability to end deduction of union dues to a specific window period each year (*see* Exhibit C).

27.    Ms. Trees examined the 2016 membership card, and her inspection confirmed that she did not fill it out or sign it.

28.    The signature on the 2016 card is not Ms. Trees' signature.

PAGE 6 – COMPLAINT



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

29.    Further, employment information contained in the card is not accurate, and is not information Ms. Trees would have provided, had she filled out the card.

30.    Ms. Trees informed SEIU 503 by email that she did not sign the 2016 card, but she received no response from SEIU 503.

31.    On December 31, 2020, Ms. Trees informed her payroll department by email that she had informed SEIU 503 the signature on the membership card was not her signature.

32.    From December 2020 to February 2021, DAS continued to deduct dues in or near the amount of $92.82 plus $2.75 from Ms. Tree's paychecks each month and distribute the same to SEIU 503.

33.    Since she resigned membership in 2018, Ms. Trees has given no consent to have her employer deduct union dues from her wages for the benefit of SEIU 503.

34.    State law controls union dues authorizations and dues deductions and provides that the union prepare a list of employees who have authorized dues deductions. ORS 243.806. "A public employer shall rely on the list to make the authorized deductions and to remit payment to the labor organization." ORS 243.806(7).

35.    Thus, SEIU 503 has sole control over union membership and sole responsibility for directing deduction of union dues by ODOT from the wages of Oregon state employees. ODOT follows directions from DAS, which depends entirely on representations made by SEIU 503 with regard to union membership and dues authorizations for employee wage deductions.

36.    Further, SEIU 503 and DAS have entered a contractual agreement ("CBA") that creates a relationship and mutual benefit between SEIU 503 and DAS for purposes of collective bargaining, union membership, and union representation. The CBA requires ODOT to deduct union dues from Oregon state employees' wages pursuant to SEIU 503's exclusive instructions.

PAGE 7 – COMPLAINT

37.     At least monthly, SEIU 503 provides a list of employees from whom DAS must deduct membership dues, and DAS follows SEIU 503's instructions to deduct dues.

38.     SEIU 503 intentionally and unreasonably interfered with Ms. Trees' exercise of her right to end her association with SEIU 503 when they failed to honor her request to end her union membership in July of 2018.

39.     SEIU 503 intentionally used electronic communications and/or United States mail to falsely and fraudulently inform DAS that Ms. Trees has authorized deduction of dues past July of 2018, despite their knowledge that Ms. Trees had withdrawn her authorization.

40.     SEIU 503 used electronic communications and/or United States mail to falsely and fraudulently inform DAS that Ms. Trees has authorized deduction of dues past December 29, 2020, despite their knowledge that Ms. Trees had withdrawn her authorization.

41.     Further, SEIU 503 makes a practice of this type of false and fraudulent communication by misrepresenting the authorization of dues deductions for other SEIU 503-represented employees government employers. *See* Exhibits E, F, G, H.

42.     SEIU 503's actions in fraudulently taking employees' money are related in terms of their purpose, results, victims and methods, and continue over a substantial period of time.

43.     Further, there is a continuing threat to public employees including Ms. Trees, that this type of fraudulent taking will re-commence and/or continue since SEIU 503 remains in complete control over deduction of union dues.

44.     SEIU 503 is an entity and an enterprise which owns and controls property and provides services, including but not limited to directing the deduction of dues from public-employee paychecks.

45.     Ms. Trees has a property interest in her lawfully earned wages of which she was

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

deprived by DAS' withholding of $92.82 plus $2.75 each month at the direction of SEIU 503.

46.     SEIU 503 is a labor organization affiliated with the national and international Service Employees International Union, which has operations at the local, state and national levels. Upon information and belief, Service Employees International Union has local affiliates in all or most states, and these affiliates send a percentage of membership dues to the national organization.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 - Violation of the Freedom of Association
### (Against all Defendants)

47.     Plaintiff re-alleges and incorporates by reference the information contained in the paragraphs set forth above.

48.     Ms. Trees' right to associate, or not to associate, with any organization is protected by the First Amendment to the United States Constitution.

49.     Under Oregon law, and the CBA between SEIU 503 and the State, SEIU 503 has control of the union membership of State employees, including Ms. Trees.

50.     In July 2018, Ms. Trees emailed SEIU 503 to end her union membership. *See* Exhibit D. SEIU 503 did not end Ms. Tress' membership, and forced her to remain a member of SEIU 503 until December 2020.

51.     SEIU 503 intentionally or negligently ignored Ms. Trees' emailed resignation of membership which she sent on July 25, 2018.

52.     SEIU 503's actions in intentionally ignoring Ms. Trees request to end her membership, and in not informing her employer of the change in her membership status, actually and proximately caused Ms. Trees' to remain a member of SEIU 503 against her expressed wishes.

53.     No compelling state interest justifies this infringement on Ms. Trees' First Amendment rights.

PAGE 9 – COMPLAINT



54.     Plaintiff suffers the irreparable injury and harm inherent in a violation of First Amendment rights, for which there is no adequate remedy at law, as a result of being forced to remain a member of SEIU 503, thereby being forced to associate with an organization with which she disagrees.

**COUNT II**
**42 U.S.C. § 1983 - Violation of the Freedom of Speech**
**(Against all Defendants)**

55.     Plaintiff re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

56.     Ms. Trees has the right to decide whether or not she wishes to support the political speech of a labor union, including the right to be free of forced dues deductions. *Janus v. AFSCME, Council 31,* 138 S. Ct. 2448 (2018).

57.     Ms. Tress does not wish to support SEIU 503, and she made her intent clear in July of 2018. She again made her intent clear in December 2020. In both instances, Ms. Trees revoked her prior authorization for deduction of union dues.

58.     DAS' act of taking Ms. Trees wages out of her paychecks for the benefit of SEIU 503 absent her authorization, violate Plaintiff's First Amendment rights, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

59.     SEIU 503's action in directing DAS to deduct union dues and assessments out of Ms. Trees' wages, even after she withdrew her authorization for such payments, violate Plaintiff's First Amendment rights, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

60.     SEIU 503 used the authority granted to it by Oregon State law to direct and control

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

DAS to deduct union dues from Ms. Trees' paychecks, even after Ms. Trees informed SEIU 503 the alleged 2016 membership card was falsified.

61.     Defendants' actions in deducting and collecting union dues without Ms. Trees' consent and pursuant to a forged membership agreement have caused Ms. Trees to suffer loss of income, emotional distress, and the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

62.     Defendants DAS and SEIU 503 act under color of state law, ORS 243.806, and the Collective Bargaining Agreement between SEIU 503 and DAS in the deduction of money from Plaintiffs' paychecks and remittance of that money to SEIU 503.

63.     Defendants have violated Ms. Trees' First Amendment rights by deducting dues from her wages without her knowing, voluntary and intelligent consent.

64.     Defendants' acts violate Ms. Trees' First Amendment right against compelled speech.

65.     Defendants' procedure for deducting dues from Ms. Trees lacks procedural safeguards to protect Ms. Trees' First Amendment rights.

66.     No compelling state interest justifies this infringement on Plaintiffs' First Amendment rights.

67.     Ms. Trees suffers the irreparable injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law, as a result of being subjected to Defendants' dues deduction scheme.

**COUNT III**
**42 U.S.C. § 1983 - Violation of the Freedom of Speech**
**(Against All Defendants)**

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

68.     Ms. Trees re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

69.     The First Amendment requires procedural safeguards to be in place to protect the free speech rights of individuals. *Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292 (1986); *Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298 (2012).

70.     In addition to union dues, SEIU 503 deducted a political assessment of $2.75 per month from Ms. Trees without her knowledge or consent.

71.     Oregon law fails to provide employees with an adequate explanation of union dues deductions and assessments, the employees' rights with regard to dues deductions and assessments and Oregon law provides no opportunity to prevent unauthorized deduction dues and assessments from employee wages. ORS 243.806.

72.      Post-deprivation remedies are not adequate to remedy the injury to Ms. Trees because she has been forced by her state employer into speech activities against her deeply held beliefs. Even a full refund of her money is an inadequate remedy for this violation of her conscience.

## COUNT IV
## 42 U.S.C. § 1983 - Violation of Due Process
### (Against all Defendants)

73.     Ms. Trees re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

74.     As a public employee, Ms. Trees, has a property interest in the wages she has earned. She also has a liberty interest protected by the First Amendment not to be compelled to associate with a union or to subsidize a union.

PAGE 12 – COMPLAINT

75.     Under Oregon Law and the CBA between SEIU 503 and DAS, SEIU 503 directs the withdrawal of dues from Ms. Trees' wages. Both SEIU 503 and DAS have a duty to implement and abide by adequate procedural safeguards to protect Ms. Tress' right to due process of law.

76.     Defendants engage in a pattern and practice that subjects Ms. Trees' to forced association with SEIU 503 and forced payment of union dues. DAS failed to implement any process for verification or confirmation of union membership, relying entirely on unsubstantiated claims by SEIU 503. SEIU 503 failed to adequately train, vet, monitor, or otherwise instruct union personnel in such a manner as to avoid violating First Amendment rights, and in fact created an environment likely to violate such rights.

77.     Defendants' actions led to the forgery of Ms. Trees' signature and subsequent violation of her rights by refusal to allow her to end union membership, and the wrongful the wrongful withdrawal of dues from Ms. Trees' wages without her consent.

78.     Defendants, acting under color of law, knowingly, recklessly, or because of callous indifference, deprived Ms. Trees of her right to be free from associating with or supporting a union with which she has fundamental and profound disagreements.

79.     Post-deprivation remedies are not adequate to remedy the injury to Ms. Trees because she has been forced by her state employer into speech activities against her deeply held beliefs. Even a full refund of her money is an inadequate remedy for this violation of her conscience.

### COUNT V
### Fraud
### (Against Defendant SEIU 503)

80.     Ms. Trees re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

PAGE 13 – COMPLAINT

81.     SEIU 503, by and through its agents or representatives, made a false and material misrepresentation of fact to Ms. Trees in December 2020 when it emailed her a copy of the second membership card, falsely claiming that she signed the card on March 22, 2016.

82.     SEIU 503, by and through its agents or representatives, made a false and material misrepresentation of fact to the DAS repeatedly, at least once per month since July of 2018 when SEIU 503 represented to DAS, that Ms. Trees was a union member from whom dues should be deducted.

83.     On information and belief, these repeated false representations were made by means of electronic communication.

84.     Because Ms. Trees revoked her 2009 membership card in 2018, and did not sign any other a union membership card, she is not a member of SEIU 503, and has not been since 2018.

85.     Ms. Trees again revoked her 2009 union membership in December of 2020, and she informed SEIU 503 that she had not signed the second membership card dated 2016.

86.     Despite their knowledge that the 2016 membership card was false and fraudulent, SEIU 503 continued to represent to DAS that Ms. Trees had authorized payment of dues through the month of February 2021.

87.     SEIU 503's misrepresentations were of material fact (union membership and authorization of dues deductions) and resulted directly in the DAS collecting money from Ms. Trees' paychecks and transferring it to SEIU 503 to the loss and detriment of Ms. Trees.

88.     Ms. Trees had no knowledge her rights with regard to union membership or non-membership at the time these deductions began in 2009. She had no knowledge of her rights in 2018 when she resigned membership and was ignored. She further had no knowledge of her rights

PAGE 14 – COMPLAINT



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

in December of 2020 when she again resigned her union membership. At all times, she actually and reasonably relied on the Union's actions in treating her as a union member and deducting dues from his paychecks until she was made aware of the false and fraudulent membership card dated 2016.

89.    DAS was required by law to rely on SEIU 503's representations, and in fact relied upon SEIU 503's material misrepresentation of fact regarding Ms. Trees' authorization of dues deductions. DAS in fact deducted dues from Ms. Trees' wages for the benefit of SEIU 503. At all times, SEIU 503 was aware that DAS would rely on its representations with regard to employee authorizations.

90.    SEIU 503 maintains complete control over the process of union membership and access to information regarding union membership. SEIU 503 had knowledge of who had, and who had not, signed union membership cards, and at all times maintained the ability to verify or confirm authorization for deduction of dues.

91.    Intentionally, or with reckless disregard for its truth or falsity, SEIU 503 furnished to the Department of Administrative Services a certification that they had authorization for deduction of dues from Ms. Trees after July 25, 2018.

92.    In falsely claiming that Ms. Trees had signed a membership card in 2016, SEIU 503 intended that Ms. Trees' money be taken from her and transferred to SEIU 503, which in fact occurred.

93.    SEIU 503's actions actually and proximately caused Ms. Trees to suffer both significant financial loss and significant emotional distress.

//

//

PAGE 15 – COMPLAINT

**COUNT VI**
**18 U.S.C. § 1964 *et seq.* –**
**Racketeer Influenced and Corrupt Practices Act**
**(Against Defendant SEIU 503)**

94.     Ms. Trees re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

95.     Upon information and belief, SEIU 503 used electronic communications to falsely and fraudulently inform DAS that Ms. Trees had authorized union membership and that the deduction of dues from her wages was authorized, even after she revoked that authorization in July 2018. Upon information and belief, this communication was repeated at least monthly from July 2018 through February 2021, based upon the standard practice and procedure of SEIU 503 and DAS.

96.     Upon information and belief, SEIU 503 used electronic communications to falsely and fraudulently inform DAS each month that Ms. Trees had authorized union membership and that the deduction of dues from her wages was authorized, even after she revoked that authorization December 2020.

97.     SEIU 503 used electronic communications to send a false and fraudulent membership card to Ms. Trees as attempted justification for the continued deduction of dues from her wages in December 2020. *See* Exhibit C.

98.     These acts constitute a predicate offense for purposes of a RICO claim under 18 U.S.C. § 1964. *See* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and these acts violate 18 U.S.C. § 1962(b) and (c).

99.     SEIU 503 and the international organization of Service Employees International Union form an enterprise for purposes of engaging in representational activity including activities in interstate commerce.

PAGE 16 – COMPLAINT

100.    SEIU 503 and DAS together form an enterprise for the purpose of managing employee wages and deductions therefrom for the benefit of SEIU 503.

101.    SEIU 503's actions constitute a pattern of false and fraudulent conduct. SEIU 503 made false and fraudulent communications to DAS repeatedly and consistently after Ms. Trees withdrew her authorization July 25, 2018, and again on December 29, 2020.

102.    Further, upon information and belief, SEIU 503 extends this pattern and practice of false and fraudulent communications to its handling of other employees' wages and authorizations for dues deductions by misrepresenting the authorization of dues deductions for other SEIU 503-represented employees paid by DAS. *See* Exhibits E, F, G, H.

103.    Upon information and belief, absent court intervention, this pattern and practice of fraudulent communication will continue in the future.

104.    SEIU 503's actions have had a direct and continuing effect on DAS' payment of wages to Ms. Trees, by reducing the amount of wages she is paid.

105.    SEIU 503's exercises control and management in terms of deduction of dues from Ms. Trees' paychecks by directing DAS from whom to take dues.

106.    But for SEIU 503's fraudulent actions, Ms. Trees would not have been deprived of her property (wages), and SEIU 503's fraudulent actions are the proximate cause of these damages.

107.    Upon information and belief, Ms. Trees has been deprived in the amount of $92.82 per month plus $2.75 per month since July of 2018.

108.    The $2.75 assessment is designated by SEIU 503 for electoral political purposes, including ballot initiatives. The purpose of the assessment was not explained to Ms. Trees, nor did she consent to it, and in fact Ms. Trees objects to a portion of her wages being used for such purposes.



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

109.    SEIU 503 is an affiliate of the national (and international) organization, Service

Employees International Union, which has locals and sub-locals in every state. Further, SEIU 503

sends a portion of membership dues to Service Employees International Union's national

organization. Its actions clearly involve and effect interstate commerce. Thus, SEIU 503's actions

in fraudulently taking Ms. Trees money effect interstate commerce.

**COUNT VII**
**ORS 166.715 *et seq.* – Oregon Racketeer**
**Influenced and Corrupt Practices Act**
**(Against Defendant SEIU 503)**

110.    Ms. Trees re-alleges and incorporates by reference the facts contained in the

paragraphs set forth above.

111.    SEIU 503 used electronic communications and/or United States mail to falsely and

fraudulently inform DAS that Ms. Trees has authorized deduction of dues.

112.    SEIU 503 propounded and relied upon a forged membership card in its

representations to DAS.

113.    SEIU 503's actions constitute forgery and falsification of a written instrument.

114.    SEIU 503 engages in a pattern or practice of such activity since SEIU 503 made

these false and fraudulent communications to DAS at least repeatedly (monthly), after Ms. Trees

withdrew her authorization July 25, 2018 (once per paycheck). ORS 166.715(6)(P) (falsified

written instrument).

115.    Further, upon information and belief, SEIU 503 extends this pattern and practice of

forgery and false and fraudulent communications to its handling of other employees' wages, by

misrepresenting the authorization of dues deductions for other SEIU 503-represented employees

paid by DAS. *See* Exhibits E, F, G, H.

116.    SEIU 503's actions have had a direct and continuing effect on DAS' payment of

PAGE 18 – COMPLAINT

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

wages to Ms. Trees. SEIU 503 exercises control and management in terms of deduction of dues from paychecks, such as Ms. Trees, by directing DAS from whom to take dues.

117.    Ms. Trees has a property interest in her lawfully earned wages.

118.    But for SEIU 503's fraudulent conduct, Ms. Trees would not have been deprived of her wages (property), consisting of $92.82 plus $2.75 per month, and SEIU 503's fraudulent conduct is a proximate cause of those damages.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs request that this Court:

A.    Issue a declaratory judgment that Defendants' actions in taking Plaintiff's money without her valid authorization violate the First Amendment, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983.

B.    Issue a declaratory judgment that the Department of Administrative Services' deduction of funds from Plaintiff's wages without clear and compelling evidence that she waived her First Amendment rights is illegal and unconstitutional.

C.    Permanently enjoin Defendants, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from maintaining and enforcing any of the policies, provisions, or actions declared unconstitutional or illegal including the deduction of union dues or fees from Plaintiff's wages without her consent;

D.    Enter a judgment against SEIU 503 awarding Plaintiff nominal damages in an amount of not less than $1.00 for violation of her constitutional rights,

E.    Enter a judgment against SEIU 503 awarding compensatory damages in an amount to be determined at trial, equal to all dues, fees or other assessments taken from Plaintiff's wages,

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

to the extent permitted by the relevant statute of limitations, together with any interest accumulated on such sum;

      F.      Grant treble actual damages under ORS 166.725(7); and 18 U.S.C. § 1964(c);

      G.      Enter a judgment awarding punitive damages against SEIU 503 for the intentional fraudulent acts of SEIU 503 under ORS 166.725(7);

      H.      Award Plaintiffs their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988, and 18 U.S.C. § 1964(c); and

      I.      Grant other and additional relief as the Court may deem just and proper.


Date: March 29, 2021

By:   *s/ Rebekah Millard*
       Rebekah Millard, OSB #121199
       rmillard@freedomfoundation.com
       James Abernathy, OSB #161867
       JAbernathy@freedomfoundation.com
       Attorneys for Plaintiff

PAGE 20 – COMPLAINT