# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STACI TREES**, | Case No. 6:21-cv-468-MK |
| Plaintiff, | **OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| **SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; and KATY COBA,** in her official capacity as Director of the Oregon Department of Administrative Services, | |
| Defendants. | |

Rebekah C. Millard, James G. Abernathy, and Shella Alcabes, Freedom Foundation, PO Box 552, Olympia, WA 98507. Of Attorneys for Plaintiff Staci Trees.

Scott A. Kronland, Stacey M. Leyton, and Zoe Palitz, Altshuler Berzon llp, 177 Post Street, Suite 300, San Francisco, CA 94108; and James S. Coon, Thomas, Coon, Newton & Frost, 820 SW Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Defendant Service Employees International Union Local 503.

Ellen F. Rosenblum, Attorney General; and Sadie Forzley, Assistant Attorney General, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants Oregon Department of Administrative Services and Katy Coba.

**Michael H. Simon, District Judge.**

In this lawsuit, a public employee is suing the union she joined in October 2009 and from which she resigned in December 2020, while remaining a state employee. The employee also is suing the Oregon Department of Administrative Services (DAS), the state agency that processes her paychecks and, through February 2021, deducted her union dues and remitted them to the union. The employee additionally is suing the Director of DAS in the Director's official capacity. Against all defendants, the employee asserts federal civil rights claims under 42 U.S.C. § 1983. Against the union, the employee also asserts a federal racketeering claim and state claims of fraud and racketeering. The key factual dispute is the employee's allegation that the union "forged" her signature in 2016 on a new union membership agreement solicited by a union organizer during a campaign asking members to reaffirm their union membership. The union denies any forgery.

After the employee commenced this lawsuit, the union filed an unfair labor practices (ULP) complaint against the employee with the Oregon Employment Relations Board (ERB), a different state agency.[1] In its ULP complaint, the union alleges that, by filing her state claims in this federal lawsuit, rather than with the ERB, the employee violated state law. An ERB Administrative Law Judge (ALJ) has begun, but not yet concluded, state proceedings. The key factual dispute in the ERB proceeding is whether the employee and the union entered into a valid agreement in March 2016. The employee wants that question to be decided in federal court, rather than by the ERB, to avoid the potential application of issue preclusion. Thus, the employee seeks a temporary restraining order (TRO) against the ERB and its ALJ—who are *not* parties in

---

[1] The ERB has jurisdiction over ULP complaints involving public employers, public employees, or labor organizations that represent public employees. *See* Or. Rev. Stat. (ORS) § 243.672.

this lawsuit. The employee requests that this Court enjoin the ERB from conducting any further activities in connection with the union's ULP complaint "until this Court shall have the opportunity to determine the appropriate forum for proceeding with this dispute." ECF 48, at 2. For the reasons explained below, the Court denies Plaintiff's motion for TRO.

## STANDARDS

In deciding whether to grant a motion for TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that a mere "possibility" of irreparable harm, rather than its likelihood, was sometimes sufficient to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In addition, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[2] Thus, the application of the relevant factors may differ, depending on whether the court is considering a TRO or a preliminary injunction.[3] Indeed, the two factors most likely to be affected by whether the motion at issue is for a TRO or a preliminary injunction are the balancing of the equities among the parties and the public interest. Finally, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc*., 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## BACKGROUND[4]

Plaintiff Staci Trees (Trees) is a public employee in Oregon. Since 2009, she has worked for the Oregon Department of Transportation (ODOT). Defendant Service Employees

---

[2] The duration of a TRO issued *without* notice may not exceed 14 days but may be extended by a court once for an additional 14 days for good cause, provided that the reasons for the extension are entered in the record. Fed. R. Civ. P. 65(b)(2). When a TRO is issued with notice and after a hearing, however, the 14-day limit for a TRO issued without notice does not apply. *See Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 n.1 (D. Or. 2016). Nevertheless, absent consent of the parties, "[a] court may not extend a 'TRO' indefinitely, even upon notice and a hearing." *Id*. Accordingly, unless the parties agree otherwise, a court should schedule a preliminary injunction hearing to occur not later than 28 days after the date that the court first issues a TRO.

[3] A preliminary injunction also is of limited duration because it may not extend beyond the life of the lawsuit. That is the role of a permanent injunction, which a court may enter as part of a final judgment, when appropriate. A preliminary injunction, however, may last for months, if not years, while the lawsuit progresses toward its conclusion. *See Pac. Kidney*, 156 F. Supp. 3d at 1222 n.2.

[4] For purposes of the pending motion for TRO, the Court finds the facts stated below by a preponderance of the evidence. The Court bases these findings primarily on the following declarations: Decl. of Stacey M. Leyton (ECF 52); Decl. of Rebekah Millard (ECF 48-1); Decl. of Zoe Palitz (ECF 46); Decl. of Shirin Khosravi (ECF 30); Decl. of Becky Johnson (ECF 29);

International Union Local 503 (SEIU) is the exclusive representative of Plaintiff's bargaining

unit. Defendant DAS is the state agency that processes and pays wages to state employees.

Defendant Katy Coba (Coba) is the Director of DAS. SEIU and DAS are parties to a collective

bargaining agreement, under which DAS deducts SEIU membership dues from the wages of

union members and then remits those dues to SEIU. On a monthly basis, SEIU sends DAS a

membership file that contains instructions for adding, maintaining, or ending dues deductions for

represented employees, and DAS follows these instructions.

In October 2009, Trees signed a union membership agreement that authorized the

deduction of SEIU union dues from her wages. Compl., ¶¶ 12-13; *see also* Compl. Ex. A. On

June 27, 2018, the U.S. Supreme Court issued its decision in *Janus v. American Federation of*

*State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), holding that, when

applied to public-sector workers, "fair share" agreements violate an employee's First

Amendment rights to freedom of association and freedom of speech.[5] Plaintiff states that in

July 2018, she informed SEIU that she no longer wanted to be a union member and no longer

wanted union dues deducted from her monthly paycheck. She contends that SEIU never

responded to this alleged communication.

Plaintiff also alleges that in December 2020 she again informed SEIU that she no longer

wanted to be a union member and no longer wanted union dues deducted from her pay. In

response to this communication, SEIU told Plaintiff that she was contractually obligated to pay

and Decl. of Nettie Pye (ECF 27). The Court also considers the background facts stated in
Plaintiff's Complaint (ECF 1) that do not appear to be contested by any Defendant.

[5] A "fair share" agreement is an agreement between a public employer and a union under
which the public entity can "require public employees to pay a fair share of the cost that a union
incurs when negotiating on their behalf over terms of employment" but no part of which may "go
to any of the union's political or ideological activities." *Janus*, 138 S. Ct. at 2487.

union dues through the end of the current annual period, which was February 28, 2021. SEIU stated that this requirement was contained in a union membership agreement that Plaintiff signed on an iPad in March 2016. Compl., Ex. C. Plaintiff contends that she did not complete or sign the 2016 agreement.[6] Compl., ¶¶ 27-29.

Whether Plaintiff signed the March 2016 dues authorization presents a factual dispute, albeit one that the Court need not resolve at this time. SEIU contends that its records show that Plaintiff signed the disputed agreement membership application and dues authorization on March 22, 2016 "via iPad" during "a general membership drive that SEIU conducted in 2016," when its "organizers visited bargaining unit workers' homes to sign up new union members and to ask existing members to sign new union membership agreements reaffirming their union membership. According to SEIU 503's membership records, a union organizer visited Plaintiff's home on the evening of March 22, 2016, and Plaintiff signed a new membership and dues agreement *on an iPad*." Decl. of Becky Johnson, ¶¶ 4-5 (ECF 29) (emphasis added). The Court does not make any findings at this time regarding the merits of this factual dispute because its resolution at this time does not affect the outcome of the pending motion.

According to DAS, it receives a membership file from SEIU on a monthly basis, which includes SEIU's instructions on adding, maintaining, or ending dues deductions for represented employees. After each monthly file is received, DAS distributes the file to state agencies for processing. The agencies then withhold union dues for employees based on that information. Decl. of Nettie Pye, ¶ 3 (ECF 27).

---

[6] The original agreement signed by Plaintiff in 2009, which Plaintiff admits signing, did not contain any similar timing requirements for discontinuing Plaintiff's dues.

ODOT deducted union dues from Plaintiff's monthly paychecks from November 1, 2009 through February 28, 2021. *Id*. ¶ 4. SEIU instructed DAS, through the membership file, to cease deducting union dues from Plaintiff's paychecks effective March 1, 2021 because she was no longer a union member. Union dues are not currently being deducted from Plaintiff's paychecks, and union dues will not be deducted again from Plaintiff's paychecks in connection with her employment with ODOT unless she rejoins SEIU and expressly authorizes dues withholding to resume. *Id*. ¶ 5.

On March 29, 2021, Plaintiff filed this lawsuit against SEIU, DAS, and Coba. Against all Defendants, Plaintiff, under 42 U.S.C. § 1983, alleges violations of her constitutional rights of freedom of association, freedom of speech, and due process. In addition, Plaintiff alleges against only SEIU fraud, federal racketeering,[7] and state racketeering,[8] based on Plaintiff's allegation that SEIU "forged" her signature in March 2016.

On June 8, 2021, SEIU filed with the ERB a ULP complaint against Plaintiff. Decl. of Shirin Khosravi, ¶ 2 (ECF 30). In that complaint, SEIU alleges that a union organizer visited Plaintiff's home on the evening of March 22, 2016, and after Plaintiff spoke with the organizer, Plaintiff signed a new membership agreement with her handwritten signature captured electronically via iPad. SEIU further alleges in its labor complaint that the 2016 membership agreement signed by Plaintiff provides authorization of dues deductions that may only be revoked after the first year "not less than thirty (30) and not more than forty-five (45) days prior

---

[7] Plaintiff asserts this claim under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, which Plaintiff erroneously calls the "Racketeer Influenced and Corrupt Practices Act." ECF 1, at 16.

[8] Plaintiff asserts this claim under Oregon's state-version of RICO, the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS § 166.715 *et seq*., which Plaintiff erroneously calls the "Oregon Racketeer Influenced and Corrupt Practices Act." ECF 1, at 18.

to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first." ECF 30, at 8 (¶ 8). Based on these allegations, SEIU alleges in its ULP complaint that Plaintiff violated Oregon law by asserting preempted state claims (fraud and state racketeering) against SEIU in Plaintiff's federal court complaint, rather than by filing a ULP complaint with the ERB.[9] *Id.* at 9-10 (¶¶ 14-18).

On June 28, 2021, DAS and Coba (collectively, the State Defendants) filed a motion to dismiss Plaintiff's federal lawsuit (ECF 26), and SEIU filed a motion to stay all claims in this action against SEIU, pending a final decision by the ERB in the SEIU's ULP proceeding against Plaintiff. ECF 28. United States Magistrate Judge Mustafa T. Kasubhai has scheduled oral argument on these two motions for December 2, 2021. ECF 41.

On October 6, 2021, Plaintiff filed a motion with the ALJ in the ERB proceeding to dismiss SEIU's complaint for lack of jurisdiction, which the ALJ denied on October 25, 2021. Decl. of Rebekah Millard, ¶¶ 4-5 (ECF 48-1); *see also* ECF 48-5 (letter ruling from ALJ). Plaintiff then filed a "motion to transmit legal question" to the full ERB and to stay the proceeding pending before the ALJ until after the full ERB's decision. The ERB denied that motion on November 1, 2021. Decl. of Rebekah Millard, ¶¶ 6-7 (ECF 48-1); *see also* ECF 48-6 (letter ruling from ERB).

---

[9] In its complaint filed with the ERB, SEIU alleges that Plaintiff violated ORS §§ 243.806(10) and 243.672(2)(c). *See, e.g.*, ECF 30, at 10 (¶¶ 16-17). ORS § 243.806(10) provides: "If a dispute arises between the public employee and the labor organization regarding the existence, validity or revocation of an authorization for the deductions and payment described under subsections (1) and (2) of this section, the dispute *shall be resolved through an unfair labor practice proceeding* under ORS 243.672" (emphasis added). ORS § 243.672(2)(c) provides that, among other things, it is an unfair labor practice for a public employee to "[r]efuse or fail to comply with any provision of ORS 243.650 to 243.806."

Two days later, November 3, 2021, Plaintiff filed her pending motion for TRO, which also was the first day of hearings held before the ALJ on SEIU's ULP complaint. ECF 48, at 2. In her TRO motion, Plaintiff asks the Court to enjoin the ERB and its agents—who are not parties in this federal lawsuit—from proceeding with any hearing or other evidentiary procedure involving the ULP complaint brought by SEIU against Plaintiff, including the hearing that had already begun earlier that morning on November 3, 2021. *Id.* On November 3, 4, and 5, 2021, the ERB's assigned ALJ heard testimony and received documentary evidence in the proceeding involving SEIU's ULP complaint and authorized the parties to file post-hearing briefs by December 17, 2021. Decl. Stacey Leyton ¶ 11 (ECF 52 at 4). After the ALJ issues a recommended order, the parties will have the opportunity to file written objections with the ERB. In Plaintiff's motion, she also requests that, if the Court decides this TRO after the conclusion of the ALJ's hearing on November 5, 2021, the Court enjoin the ALJ "from issuing a proposed ruling in the case pending the outcome of this Court's decision on appropriate forum for such proceedings." ECF 48, at 2.

## DISCUSSION

In Plaintiff's motion for TRO, she argues that SEIU is seeking from ERB a factual determination that the signature SEIU alleges Plaintiff provided in March 2016 is "authentic and valid." ECF 48, at 5. Plaintiff adds that SEIU "then plans to argue in this Court that the ERB's factual determination has preclusive effect in litigation of Ms. Trees' *federal* constitutional claims." *Id.* (emphasis in original). Plaintiff also argues that the "Court should enjoin the ERB from holding its hearing on Ms. Trees' constitutional and § 1983 claims until the question of jurisdiction is decided." *Id.*, at 7. Defendants respond, however, that Plaintiff's constitutional and § 1983 claims are not pending before the ERB. Plaintiff admits the same. *See* Decl. of Rebekah Millard ¶ 8 (ECF 48-1) ("Further, during the pre-hearing conferences with the ALJ, the ALJ

stated that the ERB is not a proper forum to hear constitutional issues."). Thus, the issues

pending before the ERB are whether Plaintiff and SEIU entered into a valid agreement under

state law in March 2016, whether Plaintiff violated state law in attempting to repudiate a valid

dues authorization agreement, and whether Plaintiff committed an unlawful labor practice in

violation of state law by asserting purportedly preempted state claims (fraud and state

racketeering) in her federal lawsuit, rather than pursuing those claims with the ERB. *See* ECF 52,

at 17-18 (Decl. of Stacey Leyton, Ex. C, July 15, 2021 Letter from ALJ Jennifer Kaufman). At

the core of the pending motion for TRO is Plaintiff's concern that the ERB's factual finding on

whether Plaintiff and SEIU entered into a valid agreement in March 2016 will have a preclusive

effect in this federal lawsuit.

      Plaintiff focuses her motion for TRO *exclusively* on her federal civil rights claims under

§ 1983, and not on her state claims. *See* ECF 48, at 6-8. Plaintiff quotes the Supreme Court in

arguing that § 1983 guarantees "a federal forum for claims of unconstitutional treatment at the

hands of state officials." *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019)

(quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)). Plaintiff adds that through § 1983,

Congress guaranteed a federal judicial forum to adjudicate civil rights deprivations perpetrated

by state actors. *See Heck*, 512 U.S. at 480.

      In its written response to Plaintiff's motion, SEIU offers four arguments, only two of

which the Court will address.[10] First, SEIU argues that the Court lacks authority to enjoin the

ERB or its ALJ, who are *not* parties to this lawsuit. Second, SEIU argues that Plaintiff has not

---

[10] Based on the Court's ruling, the Court sees no need to address SEIU's arguments that
Plaintiff's delay forecloses her claim for emergency relief and that the balance of the equities and
public interest factors counsel against granting Plaintiff's requested emergency relief.

shown that the ERB proceeding is likely to inflict "irreparable" injury on Plaintiff. *See* ECF 51, at 14-16. The State Defendants join SEIU's opposition to Plaintiff's motion. *See* ECF 53.[11]

**A.  Whether the Court Has Authority to Enjoin the Pending ERB Proceeding**

Plaintiff asks the Court to enjoin the ERB, a nonparty state agency, from completing its pending state administrative proceeding. "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). This principle applies to injunctions as well. In 1897, the Supreme Court invalidated an injunction "because it enjoins persons not parties to the suit," explaining that "we do not think it comports with well-settled principles of equity procedure to include them in an injunction in a suit in which they were not heard or represented, or to subject them to penalties for contempt in disregarding such an injunction." *Scott v. Donald*, 165 U.S. 107, 117 (1897).

This principle is codified in Rule 65 of the Federal Rules of Civil Procedure, which establishes that every injunction and TRO "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P. 65(d)(2). The Supreme Court has summarized the scope of the rule as follows:

> This [rule] is derived from the common law doctrine that a decree
> of injunction not only binds the parties defendant but also those

---

[11] The Court observes that SEIU did not argue in its written response to Plaintiff's TRO motion that Plaintiff failed to show she is likely to succeed on the merits of her federal claims in responding to the motion. At the hearing, SEIU attempted to raise this point, but the Court ruled that SEIU had waived this argument and declined to allow SEIU to present a new argument at the hearing. Thus, the Court does not address it further at this time.

> identified with them in interest, in "privity" with them, represented
> by them or subject to their control. In essence it is that defendants
> may not nullify a decree by carrying out prohibited acts through
> aiders and abettors, although they were not parties to the original
> proceeding.

*Regal Knitwear Co. v. Nat'l Lab. Rels. Bd.*, 324 U.S. 9, 14 (1945); *see also Chase Nat'l Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 436-37 (1934) (stating that "persons not technically agents or employees may be specifically enjoined from knowingly aiding a defendant in performing a prohibited act if their relation is that of associate or confederate. Since such persons are legally identified with the defendant and privy to his contempt, the provision merely makes explicit as to them that which the law already implies"). Thus, as Judge Learned Hand explained in discussing the equitable doctrine that preceded the Federal Rules of Civil Procedure:

> [T]he only occasion when a person not a party may be punished, is
> when he has helped to bring about, not merely what the decree has
> forbidden, because it may have gone too far, but what it has power
> to forbid, an act of a party. *This means that the respondent must
> either abet the defendant, or must be legally identified with him.*

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (emphasis added).

The narrow circumstances identified in Rule 65(d)(2)(C) for binding nonparties do not apply here. Plaintiff did not sue the State of Oregon; she sued SEIU, DAS, and the Director of DAS. The ERB is a distinct state agency not legally identified with any Defendant and not accused of aiding or abetting any wrongful act. *See generally Scott*, 165 U.S. at 117 ("This is not a case where the defendants named represent those not named. Nor is there alleged any conspiracy between the parties defendant and other unknown parties."). The ERB is an alternate adjudicative forum that Plaintiff does not prefer, but that does not make the ERB a party acting in concert with SEIU.

Plaintiff also argues that SEIU is pursuing ERB proceedings as a "usurpation" of this Court's jurisdiction over Plaintiff's claims. This appears to be an invocation of another narrow

exception under which courts may enjoin nonparties—when an injunction is "necessary in aid of the federal court's jurisdiction." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002), *as amended on denial of reh'g* (May 15, 2002). This is an exception to the Anti-Injunction Act's prohibition on a federal court's authority to enjoin a state court proceeding. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) ("[S]ome federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."). The Anti-Injunction Act and its "necessary in aid of the federal court's jurisdiction" exception do not apply in this case. But even when the exception applies, for *in personam* actions "injunctions are permitted where an *in personam* action bears substantial similarity to an *in rem* action." *Bennett*, 285 F.3d at 806. Here, it is "facially implausible" for Plaintiff to argue that this action bears a substantial similarity to an *in rem* action, *id.*, and thus any argument that Plaintiff's situation is analogous and requires an injunction in aid of this Court's jurisdiction is rejected.

Plaintiff's motion did not identify any specific legal basis for a federal court's authority to issue an injunction against a nonparty state agency other than § 1983 and the Court's "inherent authority." ECF 48, at 7. Plaintiff states that "the Supreme Court long ago recognized that federal injunctive relief against a state proceeding can be essential to prevent irreparable loss of a person's constitutional rights." ECF 48, at 8.[12] Shortly before the hearing, Plaintiff filed a reply,

---

[12] In discussing irreparable injury, Plaintiff cites *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("[T]his Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." (citing *Ex parte Young*, 209 U.S. 123 (1908))). In *Mitchum*, however, the plaintiff invoked § 1983 in a lawsuit against a city prosecutor, who brought a proceeding in a Florida court to close down Mitchum's bookstore as a public nuisance under the claimed authority of Florida law. The state court entered a preliminary order

in which she asserts that she relies on 28 U.S.C. §§ 1331, 1343, and 1983. These statutes, however, do not provide authority to enjoin a *nonparty*.[13]

Plaintiff cites *Bell v. Hood*, 327 U.S. 678, 684 (1946), for the proposition that "it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the State to do." *Id.* Plaintiff also cites Justice Rehnquist's dissenting opinion in *Carlson v. Green*, 446 U.S. 14, 42 (1980), for the statement that "[t]he broad power of federal courts to grant equitable relief for constitutional violations has long been established."

In *Bell*, the plaintiffs sued agents of the Federal Bureau of Investigation, seeking money damages for alleged illegal arrest, false imprisonment, and illegal searches and seizures of property, all in violation of the plaintiffs' rights under the Fourth and Fifth Amendments. The

---

prohibiting continued operation of the bookstore. Mitchum then filed his complaint in federal court under § 1983, alleging that the actions of the state judicial and law enforcement officials were depriving him of rights protected by the First and Fourteenth Amendments. *Mitchum*, 407 U.S. at 227. Mitchum sought an injunction against the state proceedings. A district judge granted a TRO, but it was dissolved by a three-judge court under 28 U.S.C. §§ 2281 and 2284. The three-judge court concluded that the TRO violated the Anti-Injunction Act, 28 U.S.C. § 2283. The Supreme Court reversed, concluding that § 1983 provided an exception to the Anti-Injunction Act's prohibition against injunctions entered against state courts. *Id.* at 242.

Thus, if the ERB were violating Plaintiff's federal civil rights by holding its ULP proceeding, then the authority of § 1983 itself, which authorizes injunctive relief, might provide a basis for the TRO that Plaintiff seeks. Plaintiff, however, does not contend that the ERB's proceeding violates Plaintiff's civil rights. She argues only that a factual finding that the ERB might issue in its proceeding would, if given preclusive effect here, disadvantage Plaintiff's prosecution of her federal claims in this Court. That is a far cry from the facts in *Mitchum*.

[13] At the hearing, Plaintiff attempted to amend the relief sought in her TRO to request relief against SEIU. As with SEIU's attempt to add a new argument regarding likelihood of success on the merits, the Court ruled that Plaintiff waived requesting such relief by not timely asserting it and declined to allow Plaintiff to amend her relief requested at the hearing.

defendants moved to dismiss on the grounds that they are federal agents who acted within the scope of their authority as officers of the United States and that the searches and seizures were incidental to lawful arrests and therefore valid. The district court dismissed the case, but on other grounds, concluding that the court lacked federal jurisdiction. The Ninth Circuit affirmed on that basis. The Supreme Court reversed.

The Supreme Court explained that subject matter jurisdiction is not defeated "by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell*, 327 U.S. at 682. The Court added:

> The issue of law is whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments. That question has never been specifically decided by this Court. That the issue thus raised has sufficient merit to warrant exercise of federal jurisdiction for purposes of adjudicating it can be seen from the cases where this Court has sustained the jurisdiction of the district courts in suits brought to recover damages for depriving a citizen of the right to vote in violation of the Constitution. And it is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do. Moreover, where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.

*Id*. at 684 (footnotes omitted).[14] Thus, *Bell* provides, in *dicta*, broad and sweeping language but not in the context of whether, and if so under what circumstances, a federal court may enjoin an

---

[14] The *Bell* lawsuit predated by 25 years *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

ongoing state administrative proceeding, let alone a proceeding in which the state agency

conducting that proceeding is not a party in the federal lawsuit.[15]

SEIU states that a potential basis for the Court's authority to enjoin the ERB might be the

All Writs Act, 28 U.S.C. § 1651. In her reply and at oral argument, Plaintiff clarified that she

does not rely on the All Writs Act as a basis for this Court's authority to issue the requested

injunction. In any event, the Court does not find that the All Writs Act would provide

jurisdiction. That statute allows federal courts to issue "all writs necessary or appropriate in aid

of their respective jurisdictions." 28 U.S.C. § 1651(a). The textual qualifier "in aid of" is

significant. "While the All Writs Act authorizes employment of extraordinary writs, it confines

the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v.

Goldsmith*, 526 U.S. 529, 534 (1999) (quoting 28 U.S.C. § 1651(a)).[16]

Plaintiff argues that the administrative hearing before the ERB is a "usurpation of this

Court's jurisdiction." ECF 48, at 4. SEIU responds that this is merely a "run-of-the-mill situation

in which there are parallel proceedings on related issues." ECF 51, at 11. SEIU states:

> It is well-settled that parallel proceedings in different forums
> (except *in rem* proceedings) do not by themselves compromise a
> federal court's jurisdiction. The Supreme Court has "never viewed

---

[15] Similarly, Justice Rehnquist's dissent in *Carlson* does not provide support for Plaintiff's motion. In that case, the administratrix of the estate of a deceased federal prisoner sued federal prison officials, alleging violations of the prisoner's due process, equal protection, and Eighth Amendment rights. The district court dismissed the complaint, but the Seventh Circuit reversed. The Supreme Court affirmed, holding that, under *Bivens*, a remedy was available directly under the Constitution to the administratrix even though her allegations could also support a suit against the United States under the Federal Tort Claims Act. *Carlson*, 446 U.S. at 16-17, 25.

[16] The Court observes that nothing in the Anti-Injunction Act, 28 U.S.C. § 2283, "prevent[s] federal courts from enjoining state administrative proceedings." *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1136 (9th Cir. 2011) (brackets in original) (quoting *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1271-72 (9th Cir. 1994)). The absence of prohibition, however, does not equate to the conferral of authority.

parallel *in personam* actions as interfering with the jurisdiction of either court . . . ." *Vendo Co. v. Lektro–Vend Corp*., 433 U.S. 623, 642 (1977) (plurality opinion). That principle has been settled for a century.

ECF 51, at 11.[17] As SEIU adds, this principle continues to apply today. *See Sandpiper Vill. Condo. Ass'n., Inc. v. Louisiana-Pac. Corp*., 428 F.3d 831, 844 (9th Cir. 2005). Thus, the All Writs Act does not authorize an injunction to block the ERB's proceedings because those proceedings do not in any way impair this Court's jurisdiction. Indeed, the ERB will not even adjudicate any of Plaintiff's federal claims. It will decide only separate ULP claims under Oregon law, although it also will likely make factual findings that might have preclusive effect in this federal lawsuit.

At oral argument, Plaintiff's counsel emphasized Plaintiff's "greatest" concern—that a factual finding made during the ERB hearing on the question of the alleged consent on the March 2016 agreement could be preclusive in this federal case. But "the necessary-in-aid-of-jurisdiction . . . principle does not authorize interference with parallel *in personam* state actions merely because the state courts might reach a conclusion before the district court does." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1101 (9th Cir. 2008). Nor does this possibility show a likelihood of irreparable injury. The Court turns to that issue next.

---

[17] Plaintiff also likely cannot evade this standard by seeking to enjoin SEIU rather than the ERB. The Ninth Circuit recognizes that an injunction directing a party not to participate in a parallel proceeding in another forum is, in effect, an injunction directed against the other forum itself and must therefore be analyzed under the All Writs Act, "for it is the restraint on other court proceedings that is problematic." *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1098 (9th Cir. 2008)). In any event, Plaintiff's motion for TRO, on its own terms, is directed only against the ERB and its ALJ and not against any party in this lawsuit.

**B.  Whether Plaintiff Has Shown a Substantial Likelihood of Irreparable Injury**

Contrary to Plaintiff's assertions, she is not being denied access to a federal forum for her § 1983 civil rights claims or her federal racketeering (RICO) claim. Plaintiff filed her § 1983 and federal RICO claims in this Court, and this Court will adjudicate them. Further, Plaintiff and SEIU both agree that ERB has no jurisdiction to adjudicate Plaintiff's federal claims, and the ERB is not doing so.

As noted, however, the ERB has identified as one of its issues the *factual* question of whether SEIU and Plaintiff entered into a valid membership agreement in 2016. Plaintiff expresses concern that such a factual determination may be found against Plaintiff and might have preclusive effect in this federal lawsuit. Plaintiff states that a factual determination on that issue by the ERB should not be given preclusive effect. Plaintiff argues that

> whether an administrative decision has a preclusive effect depends on: (1) whether the administrative forum maintains procedures that are "sufficiently formal and comprehensive"; (2) whether the proceedings are "trustworthy"; (3) whether the application of issue preclusion would "facilitate prompt, orderly and fair problem resolution"; and (4) whether the "same quality of proceedings and the opportunity to litigate is present in both proceedings." . . . Thus, the administrative decision sought here cannot have a preclusive effect because a ULP proceeding does not guarantee procedures that are "sufficiently formal and comprehensive" to make them comparably trustworthy when compared to a Federal Court proceeding. Further, application of issue preclusion would not "facilitate prompt, orderly and fair problem resolution" because the "same quality of proceedings and the opportunity to litigate is [not] present in both proceedings."

ECF 48, at 10 (citations omitted). The Court expresses no opinion on this question at this time. Issue preclusion (or "collateral estoppel," as it previously was known) is a complex doctrine, and questions of issue preclusion are best resolved after thorough and nuanced briefing and argument.

Assuming the ERB finds that Plaintiff and SEIU entered into a valid agreement in March 2016, whether that factual finding is later given preclusive effect will not deprive Plaintiff of having her day in Court on her federal civil rights and federal RICO claims. On that point, Plaintiff argues that giving preclusive effect to that factual finding is inconsistent with her Seventh Amendment right to a jury determination. SEIU disagrees, citing *B&B Hardware, Inc. v. Hargis, Inc.*, 575 U.S. 138, 150 (2015) ("[A]lthough the Seventh Amendment creates a jury trial right in suits for trademark damages, [administrative agency] decisions still can have preclusive effect in such suits." (citation omitted)), and *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337 (1979) ("[T]he law of collateral estoppel forecloses the petitioners from relitigating the factual issues determined against them in the SEC action, nothing in the Seventh Amendment dictates a different result[.]").

Plaintiff further contends that giving preclusive effect to an adverse factual finding from the ERB is inconsistent with rights under § 1983. SEIU disagrees, citing *Allen v. McCurry*, 449 U.S. 90, 98 (1980) ("[T]he legislative history of § 1983 does not . . . suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion."). SEIU adds that the Ninth Circuit has held that "the rules of claim and issue preclusion apply equally to § 1983 actions in federal courts." *White v. City of Pasadena*, 671 F.3d 918, 927 (9th Cir. 2012). SEIU also quotes the Ninth Circuit as stating that "as a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983." *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994)); *see also Wehril v. County of Orange*, 175 F.3d 692, 694 (9th Cir. 1999); *Ellrich v. Remas*, 839 F.2d 630, 635 (9th Cir. 1988).

Again, the Court will not resolve these questions at this time. SEIU may be correct on these points and, if it receives a favorable factual finding from the ERB, that may present a litigation benefit for SEIU in this lawsuit. Of course, SEIU might not receive a favorable factual finding from the ERB, and the Court will not speculate about the outcome. Alternatively, Plaintiff may be correct in her arguments that giving preclusive effect to a factual finding from the ERB is inconsistent with her rights under Oregon law, the Seventh Amendment, or § 1983. If Plaintiff is correct, the Court will *not* give the ERB's factual findings preclusive effect.

In either event, Plaintiff would not suffer an irreparable injury of the sort required for a TRO. If preclusion is not appropriate, Plaintiff has merely expended time and money litigating parallel proceedings temporally before the federal court could render its decision, which is not irreparable harm. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Graphic Commc'ns Union, Chicago Paper Handlers' & Electrotypers' Loc. No. 2 v. Chicago Trib. Co.*, 779 F.2d 13, 15 (7th Cir. 1985) ("[T]he fact that an order to arbitrate imposes a cost, the cost of the arbitration, whether it is an opportunity cost of time or an out-of-pocket expense for lawyers or witness fees or whatever, or both types of costs, does not show irreparable harm."); *Cal. Specialty Insulation, Inc. v. Allied World Surplus Lines Ins.*, 2021 WL 3033401, at *4 (C.D. Cal. July 19, 2021) ("Allied World argues that it will suffer irreparable harm absent a stay because an intervening state court judgment could render its appeal meaningless. Allied World also contends the costs associated with litigating in state court and litigating the appeal to the Ninth Circuit would constitute irreparable harm. . . . As an initial matter, nearly all courts have concluded that incurring litigation expenses does not amount to an irreparable harm." (simplified)); *Dunson v. Cordis Corp.*, 2016 WL 10679457, at *3 (N.D. Cal.

PAGE 20 – OPINION AND ORDER

Nov. 8, 2016) ("Cordis asserts that it faces irreparable harm only because, if a stay is denied, it may have to spend some amount of time litigating concurrently in both state and federal court. This would create the possibility that Cordis would be forced to making filings that would ultimately have served no purpose, as well as adding unnecessary expense for both sides. But this is the sort of mere injury in terms of money, time and energy necessarily expended that the Supreme Court has found insufficient to constitute an irreparable harm." (simplified)).

If preclusion is appropriate, Plaintiff would not have suffered irreparable harm from litigating in a parallel forum and having certain facts adjudicated that properly are considered determined in this case through issue preclusion. And it will be this federal Court that determines whether the ERB's factual findings have preclusive effect. All of this is sufficient to defeat the irreparable injury requirement for Plaintiff's requested TRO. As another district court concluded in a somewhat analogous situation:

> Turning to the traditional test for issuing a temporary restraining order, the Court finds that Plaintiffs have not made a showing of irreparable harm if the state court proceeds with its fairness hearing on the proposed class action settlement. . . . [A]ny *res judicata* effect of the state court settlement on the issues in this federal litigation will be determined in the future motion proceeding, thereby giving Plaintiffs another fair opportunity to argue their position.

*San Diego Police Officers' Ass'n v. Aguirre*, 2006 WL 8442795, at *2 (S.D. Cal. Sept. 22, 2006).

## CONCLUSION

The Court DENIES Plaintiffs' Motion for Temporary Restraining Order. ECF 48.

**IT IS SO ORDERED**.

DATED this 9th day of November, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 21 – OPINION AND ORDER