IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STACI TREES**,<br><br>    Plaintiff,<br><br>  v.<br><br>**SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503,** *et al.*,<br><br>    Defendants. | Case No. 6:21-cv-468-SI<br><br>**OPINION AND ORDER** |

Rebekah C. Millard, James G. Abernathy, and Shella S. Alcabes, Freedom Foundation, PO Box 552, Olympia, WA 98507. Of Attorneys for Plaintiff Staci Trees.

Scott A. Kronland, Stacey M. Leyton, and Zoe L. Palitz, Altshuler Berzon llp, 177 Post Street, Suite 300, San Francisco, CA 94108; and James S. Coon, Thomas, Coon, Newton & Frost, 820 SW Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Defendant Service Employees International Union Local 503.

Ellen F. Rosenblum, Oregon Attorney General; and Sadie Forzley, Assistant Attorney General, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants Oregon Department of Administrative Services and Katy Coba.

**Michael H. Simon, District Judge.**

   Plaintiff Staci Trees, a state employee, brings this lawsuit against three defendants. First, Plaintiff brings claims against Service Employees International Union Local 503 (SEIU), the union she joined in October 2009 and from which she resigned in December 2020. Second,

PAGE 1 – OPINION AND ORDER

Plaintiff asserts claims against both the Oregon Department of Administrative Services (DAS) and Katy Coba, the Director of DAS (collectively, the State Defendants). DAS is the state agency that processes the union membership rolls and instructs state agency employers to deduct union dues from state employee paychecks. DAS instructed Plaintiff's state agency employer to deduct union dues from Plaintiff's paychecks through February 2021. Against all Defendants, Plaintiff asserts federal civil rights claims under 42 U.S.C. § 1983. Against only SEIU, Plaintiff also asserts a federal racketeering claim and state claims of fraud and racketeering. One of the key factual disputes is Plaintiff's allegation that SEIU "forged" Plaintiff's signature in 2016 on a new union membership agreement and dues authorization form solicited by a union organizer during a campaign asking members to reaffirm their union membership. SEIU denies any forgery.

After Plaintiff commenced this lawsuit, SEIU filed an unfair labor practices (ULP) complaint against Plaintiff with the Oregon Employment Relations Board (ERB), a different state agency.[1] In SEIU's ULP complaint before the ERB, SEIU alleges that, by filing her state claims in this federal lawsuit, rather than with the ERB, Plaintiff violated state law. SEIU also alleges that under ORS § 243.806(10)(1), the ERB must determine the validity of the disputed 2016 union agreement. An ERB Administrative Law Judge (ALJ) heard the dispute in a three-day state administrative proceeding but has not yet issued a decision. Any party may appeal the ALJ's decision to the ERB.

Now before the Court are two motions. First, the State Defendants have moved to dismiss, arguing that Plaintiff lacks standing to request the prospective equitable relief she seeks

---

[1] The ERB has jurisdiction over ULP complaints involving public employers, public employees, or labor organizations that represent public employees. *See* Or. Rev. Stat. (ORS) § 243.672.

against them. Second, SEIU has moved to stay all claims against SEIU until after the ERB issues a final decision in the pending agency action. For the following reasons, the Court grants both motions.

**STANDARDS**

**A. Motion to Dismiss**

The U.S. Constitution confers limited authority on federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546-47 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 89-90 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the burden of the party asserting jurisdiction to establish the existence of subject matter jurisdiction. *Id.* at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the

truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

## B.  Standing

Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. To have standing, a plaintiff must have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo*, 136 S. Ct. at 1547 (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). An injury is "concrete" if it is "'*de facto*'; that is it must actually exist," meaning that it is "'real' and not 'abstract.'" *Id.* "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the Supreme Court has]

confirmed in many . . . previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549.

A plaintiff "must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). To establish Article III standing to seek injunctive relief, a plaintiff must "allege either 'continuing, present adverse effects'" of a defendant's past illegal conduct, "or 'a sufficient likelihood that [he] will again be wronged in a similar way.'" *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), and *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)). Additionally, standing to seek equitable relief requires "a showing of an inadequate remedy at law and . . . a serious risk of irreparable harm." *Pulliam v. Allen*, 466 U.S. 522, 537 (1984); *see also O'Shea*, 414 U.S. at 499.

When a plaintiff seeks prospective injunctive relief, threat of repeated future injury may suffice to provide standing. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). A plaintiff seeking prospective injunctive relief "must demonstrate 'that he is realistically threatened by a *repetition* of [the violation].'" *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (emphasis and alteration in original) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 109 (1983)), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005). The threat of repeated future injury, however, may not be "conjectural or hypothetical." *O'Shea*, 414 U.S. at 494 (quotation marks omitted).

## C.  Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter

a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (quoting *Levya v. Certified Grocers of Cal., Ltd.*, 591 F.2d 857, 863 (9th Cir. 1979)). The trial court's authority to stay "applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.* (quoting *Levya*, 593 F.2d at 863-64). In exercising this discretion, the Ninth Circuit has explained that the district court must weigh competing interests, including

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

## BACKGROUND[2]

Plaintiff is a public employee in Oregon. Since 2009, she has worked for the Oregon Department of Transportation (ODOT). Defendant SEIU is the exclusive representative of Plaintiff's bargaining unit. Defendant DAS is the state agency that process union membership information it receives monthly from SEIU and distributes the information to state agency employers for payroll processing. Defendant Katy Coba is the Director of DAS.

In October 2009, Plaintiff signed a union membership agreement that authorized the deduction of SEIU union dues from her wages. Compl., ¶¶ 12-13; *see also* Compl. Ex. A. On June 27, 2018, the U.S. Supreme Court issued its decision in *Janus v. American Federation of*

---

[2] The following background is drawn from Plaintiff's well-pleaded allegations (ECF 1) and from the following declarations: Decl. of Zoe Palitz (ECF 46); Decl. of Rebekah Millard (ECF 38-1); Decl. of Shirin Khosravi (ECF 30); Decl. of Becky Johnson (ECF 29); and Decl. of Nettie Pye (ECF 27).

*State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), holding that, when applied to public-sector workers, "fair share" agreements violate an employee's First Amendment rights to freedom of association and freedom of speech.[3] Plaintiff states that in July 2018, she informed SEIU that she no longer wanted to be a union member and no longer wanted union dues deducted from her monthly paycheck. She contends that SEIU never responded to this alleged communication.

Plaintiff also alleges that in December 2020 she again informed SEIU that she no longer wanted to be a union member and no longer wanted union dues deducted from her pay. In response to this communication, SEIU told Plaintiff that she was contractually obligated to pay union dues through the end of the current annual period, which was February 28, 2021. SEIU stated that this requirement was contained in a union membership agreement that Plaintiff signed on an iPad in March 2016. Compl., Ex. C. Plaintiff contends that she did not complete or sign the 2016 agreement.[4] Compl., ¶¶ 27-29.

Whether Plaintiff signed the March 2016 agreement and dues authorization presents a factual dispute. SEIU contends that its records show that Plaintiff signed the disputed membership agreement and dues authorization on March 22, 2016 by iPad during a general membership drive that SEIU conducted in 2016, when its "organizers visited bargaining unit workers' homes to sign up new union members and to ask existing members to sign new union membership agreements reaffirming their union membership. According to SEIU 503's

---

[3] A "fair share" agreement is an agreement between a public employer and a union under which the public entity can "require public employees to pay a fair share of the cost that a union incurs when negotiating on their behalf over terms of employment" but no part of which may "go to any of the union's political or ideological activities." *Janus*, 138 S. Ct. at 2487.

[4] The original agreement signed by Plaintiff in 2009, which Plaintiff admits signing, did not contain any similar timing requirements for discontinuing Plaintiff's dues.

PAGE 7 – OPINION AND ORDER

membership records, a union organizer visited Plaintiff's home on the evening of March 22, 2016, and Plaintiff signed a new membership and dues agreement on an iPad." Decl. of Becky Johnson, ¶¶ 4-5 (ECF 29).

According to DAS, it receives membership files from SEIU on a monthly basis, which include SEIU's instructions on adding, maintaining, or ending dues deductions for represented employees. After each monthly file is received, DAS distributes the file to state agencies for processing. The agencies then withhold union dues for employees based on that information. Decl. of Nettie Pye, ¶ 3 (ECF 27).

ODOT deducted union dues from Plaintiff's monthly paychecks from November 1, 2009 through February 28, 2021. *Id*. ¶ 4. SEIU instructed DAS, through the membership file, to cease deducting union dues from Plaintiff's paychecks effective March 1, 2021 because she was no longer a union member. ODOT stopped deducting union dues from Plaintiff's pay at that time, and have not deducted union dues from Plaintiff's pay since then.

On March 29, 2021, Plaintiff filed this lawsuit. Against all Defendants, Plaintiff, under 42 U.S.C. § 1983, alleges violations of her constitutional rights of freedom of association, freedom of speech, and due process. In addition, Plaintiff alleges against only SEIU fraud, federal racketeering,[5] and state racketeering,[6] based on Plaintiff's allegation that SEIU "forged" her signature in March 2016. Plaintiff seeks monetary damages against only SEIU. Plaintiff seeks prospective equitable relief against all Defendants.

---

[5] Plaintiff asserts this claim under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964, which Plaintiff erroneously calls the "Racketeer Influenced and Corrupt Practices Act." ECF 1, at 16.

[6] Plaintiff asserts this claim under Oregon's state-version of RICO, the Oregon Racketeer Influenced and Corrupt Organization Act, ORS § 166.715 *et seq*., which Plaintiff erroneously calls the "Oregon Racketeer Influenced and Corrupt Practices Act." ECF 1, at 18.

On June 8, 2021, after this lawsuit had begun, SEIU filed with the ERB a ULP complaint against Plaintiff. Decl. of Shirin Khosravi, ¶ 2 (ECF 30). In that complaint, SEIU alleges that a union organizer visited Plaintiff's home on the evening of March 22, 2016, and after Plaintiff spoke with the organizer, Plaintiff signed a new membership agreement with her handwritten signature captured electronically by iPad. SEIU further alleges in its labor complaint that the 2016 membership agreement signed by Plaintiff provides authorization of dues deductions that may only be revoked after the first year "not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first." ECF 30, at 8 (¶ 8). Based on these allegations, SEIU asserts three claims against Plaintiff in SEIU's ULP complaint: (1) that the ERB must resolve the issue of the validity of the disputed March 2016 dues authorization under ORS § 243.806(10)(a);[7] (2) that Plaintiff violated ORS § 243.672(2)(c) by violating ORS 243.806(10) when Plaintiff asserted preempted state claims (fraud and state racketeering) against SEIU in Plaintiff's federal court complaint, rather than by filing a ULP complaint with the ERB; and (3) that Plaintiff violated ORS § 243.672(2)(c) by violating ORS § 243.806(6) when Plaintiff attempted to revoke a valid dues authorization before its termination. *Id.* at 9-10 (¶¶ 14-18).

On June 28, 2021, the State Defendants filed their motion to dismiss Plaintiff's claims against them for lack of standing, and SEIU filed its motion to stay the claims against it. The then-assigned U.S. Magistrate Judge, the Hon. Mustafa T. Kasubhai, set oral argment on the

---

[7] ORS § 243.806(10)(a) provides: "If a dispute arises between the public employee and the labor organization regarding the existence, validity or revocation of an authorization for the deductions and payment described under subsections (1) and (2) of this section, the dispute *shall be resolved through an unfair labor practice proceeding* under ORS 243.672." (emphasis added). ORS § 243.672(2)(c) provides that, among other things, it is an unfair labor practice for a public employee to "[r]efuse or fail to comply with any provision of ORS 243.650 to 243.806."

motions for December 2, 2021. While those motions were pending, Plaintiff filed several motions before the ALJ in the ERB proceeding, seeking to dismiss or stay the ERB proceeding. Those motions were denied, and the ERB proceeding began on November 3, 2021. That same day, Plaintiff filed a motion for a temporary restraining order (TRO) before this Court, seeking to enjoin the ERB proceeding. On November 9, 2021, the Court denied the TRO. *Trees v. Serv. Emps. Int'l Union Loc. 503*, --- F.3d ---, 2021 WL 5206137 (D. Or. Nov. 9, 2021).

## DISCUSSION

### A. State Defendants' Motion to Dismiss

Plaintiff seeks only prospective equitable relief against the State Defendants. They move to dismiss, arging that Plaintiff lacks standing to bring her claims. The State Defendants contend that because Plaintiff's union dues were not being withheld at the time she filed her federal lawsuit, she has no standing to seek equitable remedies for the allegedly improper withholding of union dues. Plaintiff responds that because the State Defendants will accept any list given to them by SEIU and SEIU may in the future "forge" Plaintiff's signature on a union agreement, as they allegedly previously did, it is not unduly speculative that Plaintiff faces threatened repeated future injury by the State Defendants.

As discussed above, to obtain prospective equitable relief, a claimed threat of repeated injury may not be speculative. "A plaintiff may not rely 'on mere conjecture about possible governmental actions' to demonstrate injury, and must instead present 'concrete evidence to substantiate their fears.'" *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 420 (2013). Although a plaintiff need not "await the consummation of threatened injury to obtain preventative relief," she must plausibly show "that based on [a] course of conduct, there is a 'realistic danger' or 'credible threat'" that "a probabilistic harm will materialize." *Doe #1 v. Trump*, 335 F.R.D. 416,

429-30 (D. Or. 2020) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013), and *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013)). "In other words, the 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (emphasis in original) (quoting *Clapper*, 568 U.S. at 409).

Plaintiff relies solely on the fact that the State Defendants must follow Oregon law and rely on the membership list provided by SEIU in withholding union dues from employee paychecks. Based on this, Plaintiff argues that she faces a credible threat that in the future the State Defendants will improperly withhold union dues from Plaintiff's paycheck absent equitable relief by the Court. SEIU, however, states that Plaintiff's file is "flagged" and any future application in Plaintiff's name for union membership must first be cleared by SEIU's legal department before any action can be taken on any future application. ECF 29 at 3-4 (¶ 10). This significantly ameliorates any potential risk.

Even if this safeguard were not in place, however, Plaintiff's fear that a future membership application in her name will be "forged," and thus trigger improper withholding of future union dues, would still be too speculative to confer standing. Plaintiff's unilateral fear is not concrete evidence of a *certainly impending* future injury, versus merely a *possible* future injury. *See Cram v. Loc. 503 Serv. Emps. Int'l Union*, 2021 WL 526327, at *4 (D. Or. Feb. 8, 2021), *report and recommendation adopted sub nom. Cram v. Loc. 503 Serv. Emps. Internation Union*, 2021 WL 1041134 (D. Or. Mar. 17, 2021) ("Plaintiffs have not alleged facts from which the Court could plausibly infer that Defendants will resume deducting portions of Plaintiffs' wages for the Issues Fund. Stated another way, Plaintiffs have not established that they "face[ ] a real and immediate threat" that they will again have their wages deducted by Defendants other

than their speculative assertion to the contrary." (alteration in original) (quoting *Lyons*, 461 U.S. at 110)); *Schiewe v. Serv. Emps. Int'l Union Loc. 503*, 2020 WL 5790389, at *5 (D. Or. Sept. 28, 2020) (dismissing as moot claims for equitable relief against all three of the same defendants, with allegations involving allegedly forged union agreements and unauthorized dues withholding, finding that there is "no reasonable likelihood Plaintiff would be injured again in an identical manner, and that an alleged expectation of repeated unauthorized dues deductions was simply not reasonable"); *Stroeder v. Serv. Emps. Int'l Union Loc. 503*, 2019 WL 6719481, at *3 (D. Or. Dec. 6, 2019), *appeal dismissed sub nom. Stroeder v. Serv. Emps. Int'l Union Loc. 503*, 2019 WL 8231007 (9th Cir. Dec. 30, 2019) (dismissing equitable claim as moot because the court "cannot find a reasonable expectation that Plaintiff will be subjected to the challenged action again" when the plaintiff "is no longer a union member, her dues authorization is no longer in effect, and dues are no longer being deducted from her paychecks").

Nor does the fact that Plaintiff alleges that her First Amendment rights have been chilled suffice to allege injury to support prospective injunctive relief. "A chilling of First Amendment rights can constitute a cognizable injury, so long as the chilling effect is not 'based on a fear of future injury that itself [is] too speculative to confer standing.'" *Index Newspapers*, 977 F.3d at 826 (quoting *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015)). As discussed above, Plaintiff's fear of future injury simply is too speculative to warrant injunctive relief. *See Clapper*, 568 U.S. at 416 ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Accordingly, the Court grants the State Defendants' motion to dismiss.

## B. SEIU's Motion to Stay

SEIU moves to stay all claims asserted against it until after the ERB issues a final decision in the pending agency action. SEIU argues that a stay is appropriate under the

abstention doctrines established in either *Younger v. Harris*, 401 U.S. 37 (1971), or *Railroad Commissioner of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Alternatively, SEIU argues that a stay is warranted under the Court's inherent authority to manage its docket and, particularly, to stay a case during the pendency of an independent, parallel proceeding, based on the factors stated in *Landis v. N. America Co.*, 299 U.S. 248 (1936).

### 1. *Younger* Abstention

Abstention under *Younger* may be warranted only under three types of "parallel, pending" state proceedings: (1) "state criminal proceeding[s]"; (2) "state civil proceedings that are akin to criminal prosecutions"; or (3) state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). Applying the Supreme Court's guidance in *Sprint*, the Ninth Circuit explained:

> In civil cases . . ., *Younger* abstention is appropriate *only* when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, *and* (4) *allow litigants to raise federal challenges*. *See Sprint,* 134 S.Ct. at 593-94; *Gilbertson* [*v. Albright*], 381 F.3d [965,] 977-78 [(9th Cir. 2004)]. If these "threshold elements" are met, we then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies.

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (emphasis added). Here, the parties agree that Plaintiff's federal claims cannot be raised (and are not being raised) in the pending agency action before the ERB.

SEIU argues that the Ninth Circuit's opinion in *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004), supports *Younger* abstention here. In *Gilbertson*, however, the plaintiff filed claims under § 1983, alleging that state administrators violated the plaintiff's First Amendment, due

PAGE 13 – OPINION AND ORDER

process, and equal protection rights. At the same time, the plaintiff had a pending state action, which was an appeal of a state administrative decision. *Gilbertson*, 381 F.3d at 968. The Ninth Circuit explained that the dispositive factor for purposes of *Younger* abstention was whether the plaintiff's constitutional claims can be litigated in the pending state appeal. *Id.* at 983. The Ninth Circuit stated that the plaintiff previously had raised his due process argument before the Oregon Court of Appeals (and could have raised his First Amendment and equal protection challenges). *Id.*

Here, however, neither Trees nor SEIU can raise constitutional claims before the ERB or its ALJ. Thus, *Gilbertson* is distinguishable. Accordingly, the Court concludes that a threshold element for *Younger* abstention is not satisfied here.

### 2. *Pullman* abstention

"In *Pullman* . . ., the Supreme Court declined to adjudicate a 'substantial constitutional issue' that would be avoided by first giving the Texas courts the opportunity to decide whether the challenged regulation was valid under Texas law." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 783 (9th Cir. 2014) (quoting *Pullman*, 312 U.S. at 498-99). "*Pullman* abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy." *Id*. Abstention under *Pullman* may be appropriate only when "(1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain." *Id.* at 783-84 (quoting *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003)).

The Supreme Court has stated that "the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question

PAGE 14 – OPINION AND ORDER

unnecessary." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237 (1984). Rather, the Supreme Court has "'frequently emphasized that abstention is not to be ordered unless the [state] statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'" *Id.* Thus, for *Pullman* absention to be warranted, there must be an ambiguity in state law and it must be of a type that a clarifying construction could eliminate the need to reach a constitutional issue, or at least alter it substantially.

Here, neither party argued that this case, or the ERB proceeding, involves an uncertain or ambiguous state statute or an uncertain question of state *law*.[8] Nor do the parties contend that the ERB proceeding will construe or interpret an ambiguous state law in a manner that would render this Court's adjudication of the federal questions raised in this lawsuit unnecessary. SEIU argues only that the ERB will make a *factual* determination—the validity of the disputed 2016 union agreement purportedly signed by Plaintiff, which SEIU contends should be given preclusive effect in this Court. If the ERB's factual determination is given preclusive effect in this federal case, SEIU argues, that conclusion will have a determinative effect on Plaintiff's constitutional claims, either in favor of or against Plaintiff and SEIU.

---

[8] At oral argument SEIU raised for the first time the argument that the ERB proceeding involve mixed questions of law and fact, specifically that the ALJ also will need to resolve whether the ERB is the exclusive forum for determining whether a dues withdrawal agreement is valid and whether it ORS § 243.806 preempts other state law claims. The Court notes that the ALJ did not include the question of preemption in the ALJ's list of issues for review and that question does not appear to be necessary for the ALJ to resolve. Regardless, SEIU's argument was not presented in its motion to stay (or even in its the reply brief). The only argument SEIU made in its motion for *Pullman* abstention was: "A ruling by the ERB that the deductions were lawful because Ms. Trees' 2016 membership agreement was valid would narrow [Plaintiff's] constitutional claims, if not moot them entirely." ECF 28 at 11. The Court declines to consider SEIU's argument raised for the first time at the hearing. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (noting that "arguments raised for the first time in a reply brief are waived"); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Plaintiff disputes that the ERB's factual determination regarding the 2016 agreement should be given preclusive effect in this Court. Plaintiff also asserts that even if the 2016 agreement is valid, there would remain additional federal constitutional issues for this Court to resolve. Regardless of whether the ERB's factual determination will be given preclusive effect, a question that the Court declines to answer at this time,[9] the fact that the ERB will make such a factual determination is not a basis for the "extraordinary and narrow" *Pullman* abstention doctrine. *Cf. Patel v. City of Los Angeles*, 594 F. App'x 415 (9th Cir. 2015) ("While the facts found in a state mandamus action may have issue preclusive effect in a subsequent federal proceeding, that alone is insufficient to justify [*Pullman*] abstention."). The Court concludes that *Pullman* abstention is not appropriate in this case.

### 3. Stay under *Landis*

In the alternative, SEIU argues that the Court should exercise its inherent authority to stay adjudication of all claims that Plaintiff asserts against SEIU. As discussed above, the Supreme Court in *Landis* identified several factors that a court should consider when evaluating whether to stay a case based on the existence of a separate and independent parallel proceeding. The Court now considers these factors, as described by the Ninth Circuit in *CMAX* and *Lockyer*.

#### a. Possible Damage to Plaintiff If Stay Is Granted

First, a court must consider any harm to the nonmoving party if a stay is granted. Plaintiff argues that she will suffer injury from being subjected to the fear of future injury in having union dues taken without her permission. As discussed above, the Court rejects this possible future injury as speculative.

---

[9] At oral argument, the parties confirmed that they agree that the Court need not (and should not) answer the question of preclusive effect at this time but should wait for a full record to be developed by the ERB.

Plaintiff also argues that she will be harmed by delay affecting evidence,[10] particularly where "records are concerned." SEIU has already produced some documents during the ERB proceedings, but Plaintiff contends that there are additional documents she wishes to obtain through discovery. At oral argument, SEIU's counsel confirmed that SEIU already had placed a "litigation hold" on all records relevant to this action. The Court finds this sufficient to protect Plaintiff from any harm from delay with respect to documentary evidence.

Regarding any other potential harm that might be caused by delay, "lengthy or indefinite" stays may create a "danger of denying justice by delay" because such delay "inherently increases the risk the witnesses' memories will fade and evidence will become stale." *Blue Cross and Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). The administrative hearing, however, has already occurred. Eight witnesses testified on the record, including the union organizaer who purportedly went to Plaintiff's home and obtained Plaintiff's signature on the disputed 2016 agreement. Thus, any risk from delay has been significantly

---

[10] Although not specifically articulated in the context of prejudice, the harm to which Plaintiff most strenuously objects throughout her brief is that the ERB might make factual determinations adverse to Plaintiff, which this Court may ultimately conclude are preclusive and which potentially may be determinative of some or all of Plaintiff's federal claims. As the Ninth Circuit has explained, however, that is not the type of harm on which to base the denial of a stay in favor of a parallel proceeding.

> It may be that CMAX will be prejudiced by the delay in the sense that evidence will be obtained, or rulings made, as a result of the Board proceedings, which will adversely affect the claims which CMAX asserts in the district court. But this is not the kind of prejudice which should move a court to deny a requested postponement. If CMAX is prejudiced by such an eventuality it will be because the Board proceedings demonstrate a weakness in its case. And if its case is weak, justice will be served by having that fact revealed prior to the district court trial.

*CMAX*, 300 F.2d at 269.

PAGE 17 – OPINION AND ORDER

reduced. The Court has considered the facts and arguments related to this factor and finds that this factor, at most, is neutral in the balance of the parties' competing interests.

### b. SEIU's Hardship If Litigation Proceeds

Second, the moving party must make a "clear case of hardship or inequity" if the motion to stay is denied if there is even a fair possibility that the stay will work to damage the nonmoving party. *CMAX*, 300 F.2d at 268-69 (quoting *Landis*, 299 U.S. at 255). As previously discussed, Plaintiff has not shown even a fair possibility that she may be damaged by a stay. In addition, SEIU argues that it would be a significant waste of time and resources for SEIU to conduct "pointless discovery" and to litigate whether the membership agreement was "forged" when that issue will be decided by the ERB. SEIU also contends that it is a waste of the parties' and court's resources to litigate pleading motions if the need to do so would be eliminated or limited by the ERB factual determinations.

"The requirement to defend a suit, without more, does not constitute a clear case of hardship or inequity. However, subjecting a litigant to the hardship and inequity of unnecessary and duplicative litigation favors a stay." *Schumann v. Amazon.com Inc.*, 2021 WL 5069178, at *3 (D. Or. July 19, 2021) (citation omitted); *see also Bangor Hydro Elec. Co. v. Bridgewell Res. LLC*, 2011 WL 13250919, at *3 (D. Or. July 20, 2011) (finding that this factor weighed in favor of a stay when the similar issue was before another proceeding and when a factual determination in the other proceeding "would certainly clarify most, if not all, of the claims Bangor seeks in this action and would ultimately determine Bangor's need to proceed in this action"). This factor supports a stay.

### c. "Orderly Course of Justice"

Third, the orderly course of justice is "measured by considering whether issues will be simplified or complicated, proof, and questions of law which could be expected to result from

the stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268). Determining whether to grant a stay of litigation pending a related proceeding "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Levya*, 593 F.2d at 863-64. The issues need not be identical but need only to be simplified by granting a stay and awaiting a final ruling. *See Landis*, 299 U.S. at 254; *Cohen v. Carreon*, 94 F. Supp. 2d 1112, 1117 (D. Or. 2000).

The issues in this case could be simplified by the determinations of the ERB. Whether the 2016 union agreement is valid is an important fact in resolving Plantiff's federal claims. The ERB will be deciding that fact. The parties dispute whether that factual determination should be given preclusive effect in this Court, and the undersigned will, at the appropriate time, decide that issue. If the Court does give the ERB's factual determination preclusive effect, that would significantly limit or simplify this case. Thus, this factor weighs in favor of a stay. Although Plaintiff may be subject to a modest delay, after weighing all relevant factors and circumstances, the Court finds that a stay is warranted.

## CONCLUSION

The Court GRANTS the State Defendants' Motion to Dismiss, ECF 26, and dismisses all claims asserted against the State Defendants. The Court also GRANTS Defendant SEIU's Motion to Stay, ECF 28, and stays all claims asserted against SEIU until after the ERB issues a final order in the pending agency action.

**IT IS SO ORDERED**.

DATED this 8th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge