IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STACI TREES**, | Case No. 6:21-cv-468-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 503**, | |
| Defendant. | |

Rebekah Schultheiss (Millard) and James G. Abernathy, FREEDOM FOUNDATION, PO Box 552, Olympia, WA 98507. Of Attorneys for Plaintiff.

Stacey M. Leyton, Scott A. Kronland, and Zoe Louise Palitz, ALTSHULER BERZON LLP, 177 Post Street, Suite 300, San Francisco, CA 94108; and James S. Coon, THOMAS, COON, NEWTON & FROST, 820 SW Second Avenue, Suite 200, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Staci Trees, a state employee, sues Service Employees International Union

Local 503 ("SEIU"), the union she joined in October 2009 and from which she resigned in

December 2020.[1] Plaintiff asserts federal civil rights claims under 42 U.S.C. § 1983, a federal

---

[1] Plaintiff originally also asserted claims against both the Oregon Department of Administrative Services ("DAS"), the state agency that processes union membership information it receives monthly from SEIU and distributes the information to state agency employers for payroll processing, and Katy Coba, the Director of DAS (collectively, the "State Defendants"). On December 8, 2021, the Court granted the State Defendants' motion to dismiss all claims against them for lack of Article III standing. ECF 61.

racketeering claim, and state claims of fraud and racketeering. One of the key factual disputes is Plaintiff's allegation that SEIU "forged" Plaintiff's signature in 2016 on a new union membership agreement and dues authorization form solicited by a union organizer during a campaign asking members to reaffirm their union membership. SEIU denies any forgery.

After Plaintiff commenced this lawsuit, SEIU filed an unfair labor practices ("ULP") complaint against Plaintiff with the Oregon Employment Relations Board ("ERB"), a different state agency.[2] In SEIU's ULP complaint before the ERB, SEIU alleged that, by filing her state claims in this federal lawsuit, rather than with the ERB, Plaintiff violated state law. SEIU also alleged that under ORS § 243.806(10)(a), the ERB must determine the validity of the disputed 2016 union agreement. The Court stayed this case to allow the ERB to resolve the dispute. ECF 61. An ERB Administrative Law Judge ("ALJ") heard the dispute in a three-day state administrative proceeding and made factual findings that Plaintiff had signed the 2016 agreement and that it was a valid agreement. The Oregon Court of Appeals affirmed the ERB's decision, and the Oregon Supreme Court denied Plaintiff's petition for review.

Now before the Court are three motions by SEIU. First, SEIU moves for leave to file a supplemental answer asserting collateral estoppel as an affirmative defense to all of Plaintiff's claims. Second, SEIU requests judicial notice of documents related to the ERB and Oregon state court proceedings. Third, SEIU moves for judgment on the pleadings, or in the alternative, for summary judgment on all of Plaintiff's claims, arguing that issue preclusion applies such that Plaintiff fails to state any claims, Plaintiff lacks Article III standing to seek prospective relief, and Plaintiff fails to state a federal claim. For the following reasons, the Court grants all motions.

---

[2] The ERB has jurisdiction over ULP complaints involving public employers, public employees, or labor organizations that represent public employees. *See* Or. Rev. Stat. (hereinafter "ORS") § 243.672.

**STANDARDS**

**A.  Supplemental Pleadings**

Rule 15(d) of the Federal Rules of Civil Procedure provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981). Rule 15(d) serves as "a tool of judicial economy and convenience" to "promote the economical and speedy disposition of the controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Leave to permit a supplemental pleading thus is "favored." *Id.*

"Motions to amend pursuant to Rule 15(d) should be granted unless undue prejudice to the opposing party will result." *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986) (cleaned up). "In addition to prejudice, courts commonly evaluate the propriety of a motion to supplement based on factors such as (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments or supplements, and (4) futility." *Desio v. State Farm Mut. Auto. Ins.*, 339 F.R.D. 632, 638 (D. Nev. 2021). That is, "the legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)." *California v. U.S. Dep't of Lab.*, 155 F. Supp. 3d 1089, 1099 (E.D. Cal. 2016) (cleaned up).

**B.  Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings is brought under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, a

court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)). Thus, in a Rule 12(c) motion a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal for failure to state a claim under Rule 12(b)(6) "is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). In addition, "to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (*Iqbal* standard applies to review of Rule 12(c) motions).

## BACKGROUND

Plaintiff is a public employee in Oregon. Since 2009, she has worked for the Oregon Department of Transportation ("ODOT"). Defendant SEIU is the exclusive representative of Plaintiff's bargaining unit.

In October 2009, Plaintiff signed a union membership agreement that authorized the deduction of SEIU union dues from her wages. Compl. (ECF 1) ¶¶ 12-13; *see also id.*, Ex. A. On June 27, 2018, the U.S. Supreme Court issued its decision in *Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 585 U.S. 878 (2018), holding that, when applied to public-sector workers, "fair share" agreements violate an employee's First

Amendment rights to freedom of association and freedom of speech.[3] Plaintiff states that in July 2018, she informed SEIU that she no longer wanted to be a union member and no longer wanted union dues deducted from her monthly paycheck. She contends that SEIU never responded to this alleged communication.

Plaintiff also alleges that in December 2020 she again informed SEIU that she no longer wanted to be a union member and no longer wanted union dues deducted from her pay. In response to this communication, SEIU told Plaintiff that she was contractually obligated to pay union dues through the end of the current annual period, which was February 28, 2021. SEIU stated that this requirement was contained in a union membership agreement that Plaintiff signed on an iPad in March 2016. Compl., Ex. C. Plaintiff contends that she did not complete or sign the 2016 agreement.[4] *Id.* ¶¶ 27-29.

ODOT deducted union dues from Plaintiff's monthly paychecks from November 1, 2009, through February 28, 2021. Decl. of Nettie Pye, ¶ 4 (ECF 27) SEIU instructed DAS, through a monthly membership file, to cease deducting union dues from Plaintiff's paychecks effective March 1, 2021, because she was no longer a union member. ODOT stopped deducting union dues from Plaintiff's pay at that time and has not deducted union dues from Plaintiff's pay since then.

---

[3] A "fair share" agreement is an agreement between a public employer and a union under which the public entity can "require public employees to pay a fair share of the cost that a union incurs when negotiating on their behalf over terms of employment" but no part of which may "go to any of the union's political or ideological activities." *Janus*, 585 U.S. at 931 (Kagan, J., dissenting).

[4] The original agreement signed by Plaintiff in 2009, which Plaintiff admits signing, did not contain any similar timing requirements for discontinuing Plaintiff's dues.

On March 29, 2021, Plaintiff filed this lawsuit against SEIU and the State Defendants. Against all Defendants, Plaintiff, under 42 U.S.C. § 1983, alleged violations of her constitutional rights of freedom of association, freedom of speech, and due process. In addition, Plaintiff alleged against only SEIU fraud, federal racketeering,[5] and state racketeering,[6] based on Plaintiff's allegation that SEIU "forged" her signature in March 2016. Plaintiff sought monetary damages against only SEIU, and prospective relief against all Defendants.

On June 8, 2021, SEIU filed with the ERB its ULP complaint against Plaintiff. ECF 30 ¶ 2. In that complaint, SEIU alleged that a union organizer visited Plaintiff's home on the evening of March 22, 2016, and after Plaintiff spoke with the organizer, Plaintiff signed a new membership agreement with her handwritten signature captured electronically by iPad. SEIU further alleged that the 2016 membership agreement signed by Plaintiff provides authorization of dues deductions that may only be revoked after the first year "not less than thirty (30) and not more than forty-five (45) days prior to the end of any annual period or the termination of the contract between my employer and the Union, whichever occurs first." ECF 30 ¶ 8. Based on these allegations, SEIU asserted three claims against Plaintiff: (1) that the ERB must resolve the issue of the validity of the disputed 2016 dues authorization under ORS § 243.806(10)(a);[7]

---

[5] Plaintiff asserts this claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, which Plaintiff erroneously calls the "Racketeer Influenced and Corrupt Practices Act." Compl. at 16.

[6] Plaintiff asserts this claim under Oregon's state-version of RICO, the Oregon Racketeer Influenced and Corrupt Organization Act, ORS § 166.715 *et seq*., which Plaintiff erroneously calls the "Oregon Racketeer Influenced and Corrupt Practices Act." Compl. at 18.

[7] ORS § 243.806(10)(a) provides: "If a dispute arises between the public employee and the labor organization regarding the existence, validity or revocation of an authorization for the deductions and payment described under subsections (1) and (2) of this section, the dispute *shall be resolved through an unfair labor practice proceeding* under ORS 243.672." (emphasis

(2) that Plaintiff violated ORS § 243.672(2)(c) by violating ORS § 243.806(10) when Plaintiff asserted preempted state claims (fraud and state racketeering) against SEIU in Plaintiff's federal court complaint, rather than by filing a ULP complaint with the ERB; and (3) that Plaintiff violated ORS § 243.672(2)(c) by violating ORS § 243.806(6) when Plaintiff attempted to revoke a valid dues authorization before its termination. *Id.* ¶¶ 14-18.

While those motions were pending, Plaintiff filed several motions before the ALJ in the ERB proceeding, seeking to dismiss or stay the ERB proceeding. Those motions were denied, and the ERB proceeding began on November 3, 2021. That same day, Plaintiff filed a motion for a temporary restraining order ("TRO") before this Court, seeking to enjoin the ERB proceeding. On November 9, 2021, the Court denied the TRO. *Trees v. Serv. Emps. Int'l Union Loc. 503*, 570 F. Supp. 3d 954 (D. Or. 2021).

On December 8, 2021, the Court granted the State Defendants' motion to dismiss Plaintiff's claims against them for lack of standing and dismissed all claims against State Defendants. *Trees v. Serv. Emps. Int'l Union Loc. 503*, 574 F. Supp. 3d 856 (D. Or. 2021). In the same Opinion, the Court also granted SEIU's motion to stay the case until after the ERB issued a final decision in the agency action. *Id.*

The ERB held a three-day hearing before an ALJ from November 3 to 5, 2021, which involved witnesses, oral arguments, and post-hearing briefing by both parties. ECF 74-10 at 2, 11-15. On March 8, 2022, the ALJ issued a recommended ruling and proposed order dismissing SEIU's complaint and finding that "[Plaintiff]'s signature was not forged on the 2016

---

added). ORS § 243.672(2)(c) provides that, among other things, it is an unfair labor practice for a public employee to "[r]efuse or fail to comply with any provision of ORS 243.650 to 243.809."

membership agreement, and . . . the 2016 membership agreement is valid." ECF 74-8 at 11. The

ERB adopted this recommendation in an order issued on August 31, 2022. ECF 74-10.

Both parties filed petitions for review with the Oregon Court of Appeals, and the Court of

Appeals affirmed the ERB's decision on January 24, 2024. *SEIU Local 503 v. ST*, 330 Or.

App. 310 (2024). Plaintiff then filed a petition for review with the Oregon Supreme Court, which

the Oregon Supreme Court denied on August 29, 2024. ECF 74-13.

## DISCUSSION

### A.  Leave to Supplement Answer

SEIU moves for leave to supplement its answer to assert the affirmative defense of

collateral estoppel, or issue preclusion, which has newly arisen after the conclusion of the ERB

proceeding. SEIU asserts that the Ninth Circuit has held not only that "a preclusion defense that

arises after the pleadings have been filed" can justify leave to amend, but that such a defense

"can be raised only by a motion for leave to file a supplemental answer under Rule 15(d)."

*Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984). Plaintiff responds that leave to

supplement would be futile. She contends that the issue preclusion defense is "categorically

unavailable" because it would violate her Seventh Amendment right to a jury trial.[8]

The U.S. Supreme Court has addressed this question and held that the Seventh

Amendment does not bar a finding of preclusion from a court of equity, *Parklane Hosiery Co. v.

Shore*, 439 U.S. 322, 335 (1979), nor from an administrative agency adjudication, *B&B

Hardware, Inc., v. Hargis Industries, Inc.*, 575 U.S. 138, 140-41 (2015). The Supreme Court

---

[8] Plaintiff argues that there are "many other reasons" why issue preclusion does not apply
in this case, but that she saves them for her response to the motion for judgment on the pleadings.
The Court thus considers only Plaintiff's Seventh Amendment argument in ruling on SEIU's
motion for leave to supplement its answer.

held that "the Seventh Amendment does not strip competent tribunals of the power to issue judgments with preclusive effect," even considering that administrative agencies, in their modern form, did not exist at common law. *B&B Hardware*, 575 U.S. at 150.

Plaintiff acknowledges these cases but argues that the recent Supreme Court decision in *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), "leaves [their] conclusion in question." Plaintiff concedes that *Jarkesy* did not address issue preclusion—the Supreme Court addressed only whether a jury was required to adjudicate a securities fraud case seeking civil penalties. *Id.* at 120. But Plaintiff argues that if the SEC "may not, under the Seventh Amendment, proceed against a defendant before an ALJ, the court cannot possibly apply issue preclusion to any facts determined by an ALJ without similarly depriving the defendant of his Seventh Amendment rights." Such an interpretation overstates the holding in *Jarkesy* and contradicts the Supreme Court's instructions to lower courts that

> [i]f a precedent of this Court has direct application in a case, a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions. This is true even if the lower court thinks the precedent is in tension with some other line of decisions.

*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (cleaned up). Thus, even if Plaintiff thinks that the earlier Supreme Court cases are in tension with *Jarkesy*, there are directly controlling cases, *Parklane* and *B&B Hardware*, and thus the Court follows those cases.

The Court therefore grants SEIU's motion to supplement its answer. The Court considers the supplemented answer in evaluating SEIU's motion for judgment on the pleadings.

### B. Judicial Notice

SEIU requests that the Court take judicial notice of 14[9] exhibits: briefing, rulings, and orders in the ERB proceeding and in state court. Plaintiff opposes this request to the extent that SEIU seeks judicial notice of the facts within the exhibits. SEIU argues that judicial notice can be taken of factual findings when the preclusive effect of those decisions is at issue.

Under Rule 201 of the Federal Rules of Evidence, a court make take judicial notice of adjudicative facts that are "capable of accurate and ready determination by sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)(2)). "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In the preclusion context, a federal court may "[take] judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes." *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005). This includes administrative agency documents. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 435 (9th Cir. 1992) (taking judicial notice of state administrative agency published decisions). A court may not, however, "take judicial notice of facts presented in those documents or in court opinions for the purpose of considering those facts to be established in the case currently before them." *Dauven v. U.S. Bancorp*, 390 F. Supp. 3d

---

[9] SEIU's original request for judicial notice included only 13 exhibits. ECF 75. In Plaintiff's response in opposition to SEIU's motion for judgment on the pleadings, Plaintiff references the ALJ's ruling on SEIU's motion *in limine* to exclude certain witnesses at the ERB hearing. *See* ECF 80 at 25-26. SEIU therefore requests judicial notice of this ruling in its reply in support of its motion for judicial notice. *See* ECF 84 at 3 n.2. The Court finds that this additional request is properly raised and thus includes Exhibit 14, ECF 83-1, in its decision on SEIU's request for judicial notice.

1262, 1269 (D. Or. 2019) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)). The Court thus takes judicial notice of these exhibits to determine what issues were actually litigated before the ERB and Oregon state courts and how the issues were decided, but does not accept the underlying facts as true.

## C. Judgment on the Pleadings

SEIU moves for judgment on the pleadings. SEIU argues that Plaintiff's claims are precluded by the ERB proceeding, and that even if issue preclusion does not apply, Plaintiff lacks Article III standing to seek prospective relief and fails to state any federal claims. The Court first addresses whether issue preclusion applies.

### 1. Standards for Issue Preclusion

"When a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (cleaned up).[10]

In Oregon, issue preclusion applies when five elements are satisfied: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final

---

[10] "It is well established that judicial affirmance of an administrative determination is entitled to preclusive effect." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480 n.21 (1982); *see also McClure v. Santos*, 669 F. Supp. 344, 345-46 (D. Or. 1987) ("I find no Oregon caselaw . . . addressing the question of whether an issue determined by a state appellate court exercising its power of administrative review, and therefore not applying *de novo* review, should be given preclusive effect in a subsequent action. . . . I conclude that if the Oregon Supreme Court were to address this question, it would follow the ruling of the United States Supreme Court and conclude that a judicial affirmance of an administrative determination may be given preclusive effect in a subsequent proceeding."). Neither SEIU nor Plaintiff, however, discuss the preclusive effect of the Oregon Court of Appeals decision affirming the ERB order. Because the Court finds that the ERB proceeding has preclusive effect, the Court does not consider any preclusive effect of the Oregon Court of Appeals decision.

decision on the merits in the prior proceedings; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceedings; and (5) the prior proceedings was the type of proceedings to which this court will give preclusive effect. *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 104 (1993). "Even where those elements are met, 'the court must also consider the fairness under all the circumstances of precluding a party.'" *Minihan v. Stiglich*, 258 Or. App. 839, 855 (2013) (quoting *State Farm Fire & Cas. Co. v. Century Home Components, Inc.*, 275 Or. 97, 110 (1976). "The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is asserted to show that the third and fifth requirements are not met." *Thomas v. U.S. Bank Nat'l Ass'n*, 244 Or. App. 457, 469 (2011).

## 2. Analysis

SEIU argues that all five factors for issue preclusion are met, and thus the Court should apply issue preclusion to dismiss Plaintiff's claims. Plaintiff concedes that the proceedings involved the same parties, but disputes that the remaining four factors are satisfied. Plaintiff also argues that fairness considerations counsel against preclusion. The Court addresses the factors in turn.

### a. Identical Issues

Oregon courts have adopted "a strict standard for the 'identity of issues' requirement and require that 'the precise question was raised and determined in the former suit.'" *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1007 (9th Cir. 2007) (quoting *State v. Hunt*, 161 Or. App. 338 (1999)). In other words, the "relevant factual issues" determined in the prior proceeding must be "identical to" the factual issues raised in the later dispute. *Marshall v. PricewaterhouseCoopers, LLP*, 316 Or. App. 610, 621-22 (2021).

In the ERB's decision, it stated that "it is undisputed that SEIU and [Plaintiff] had a dispute as to whether her 2016 authorization for dues deductions existed and was valid, as well as whether and how she could revoke it. SEIU sought resolution of that dispute through an unfair labor practice proceeding." 74-10 at 3. The ERB went on to make a finding of fact that Plaintiff signed the 2016 membership card, and a conclusion of law that the parties entered into a valid dues deduction authorization agreement in 2016 based on Plaintiff's signature on the card. *Id.* at 4-5, 11-15. The Oregon Court of Appeals affirmed this finding as supported by substantial evidence. *SEIU Local 503*, 330 Or. App. at 318-19. These findings and conclusions are identical to a factual issue raised in Plaintiff's Complaint in this case, in which she repeatedly alleges that she did not sign the 2016 membership card and that there was no valid agreement. Compl. ¶¶ 2, 27-31, 33, 61, 77, 81, 84-86, 92, 97, 111-13.

Plaintiff argues only that the issues are not identical with respect to her First and Fourteenth Amendment claims (Counts I-IV of her Complaint). Regarding her First Amendment claims (Counts I-III), Plaintiff contends that the ERB ruled on the *contractual validity* of her signature, but not whether the 2016 card constitutes an adequate *constitutional waiver* of her First Amendment rights under *Janus*. The Ninth Circuit squarely rejected such a reading of *Janus* in *Belgau v. Inslee*, explaining that the Supreme Court "discussed constitutional waiver *because* it concluded that nonmembers' First Amendment right had been infringed, and in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement." 975 F.3d 940, 952 (9th Cir. 2020) (emphasis in original). The plaintiffs in *Belgau* voluntarily signed membership cards, just as the ERB found that Plaintiff did, and the Ninth Circuit denied their argument that they had a First Amendment right of "the freedom not to pay union dues without 'consent that amount to the waiver of a First

Amendment right.'" *Id.* at 951-52. Accordingly, Plaintiff's First Amendment claim does not

require an analysis of waiver of a First Amendment right, and the issue of the validity of

the 2016 agreement is identical in the ERB proceeding and in Counts I-III at issue here.

Turning to Plaintiff's Fourteenth Amendment claim (Count IV), Plaintiff argues that "the

issue is whether there were adequate procedural safeguards, including notice and an opportunity

to be heard, prior to her wages being withdrawn—not whether the 2016 card was considered

valid." She thus contends that she may recover for a procedural due process violation even if she

was found to have signed the 2016 membership card. In support, Plaintiff cites cases involving

*Hudson* notices, which are notices that explain union expenses for the purpose of allowing

*nonmembers* of the union to decide whether to object to payments not for collective bargaining.

*See Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807 (9th Cir. 1997); *Hudson v. Chi.*

*Tchrs. Union*, 922 F.2d 1306 (7th Cir. 1991). These cases merely distinguish between the

adequacy of notice provided to *nonmembers* and the adequacy of the underlying fee assessment.

In fact,

> the holding of *Hudson* is inapplicable to union members. In
> *Hudson*, the complainants were employees who chose not to join
> the union but were nonetheless required to pay agency fees. The
> case, therefore, has no application to employees like [Plaintiff],
> who voluntarily signed a union membership agreement and
> contractually agreed to pay the full dues.

*Wheatley v. N.Y. State United Tchrs.*, 80 F.4th 386, 392 (2d Cir. 2023) (citations omitted).

The deduction of dues pursuant to a voluntary authorization—as the ERB found Plaintiff

had provided in this case—does not deprive an employee of a protected liberty or property

interest such that due process rights are triggered. *See id.* at 393 ("Because Appellant was

contractually obligated to pay union dues pursuant to the Membership Agreement that she

voluntarily signed, and the District's withholding of union dues did not constitute a violation of

her First Amendment rights, Appellant's Fourteenth Amendment claim fails." (citing *Wagner v. Univ. of Wash.*, 2022 WL 1658245, at *1 (9th Cir. May 25, 2022) (unpublished))). Plaintiff's Fourteenth Amendment claim thus rises and falls with her First Amendment claim and the underlying issue of the validity of the 2016 agreement. Therefore, the issues litigated before the ERB, and affirmed by the Oregon Court of Appeals, are identical to the issue in this case.

### b.  Actually Litigated and Essential to a Final Decision on the Merits

To satisfy the "actually litigated and essential to a final decision" requirement, "a prior court's resolution of an issue must either be apparent from the face of a judgment or order or, if not apparent from the face of a judgment or order, must have been necessary to the resolution of the prior adjudication." *Leach v. Scottsdale Indem. Co.*, 261 Or. App. 234, 240 (2014) (citing *Westwood Constr. Co. v. Hallmark Inns*, 182 Or. App. 624, 635-36 (2002)).

SEIU argues that the ERB reached both a finding of fact and conclusion of law as to the validity of Plaintiff's signature, and the merits of the alleged ULPs depended on the validity of the signature, such that the issue was actually litigated and essential to the ERB's decision. *See Kolander v. Weeks*, 916 F. Supp. 1042, 1048 (D. Or. 1996) ("[T]he hearings officer was required to make a determination on each deduction requested by plaintiff, and on the validity of each state regulation. As a result, the hearing officer's determination that the state regulations were in accord with the federal regulations was essential to his determination on the merits of plaintiff's requested deductions."). SEIU further contends that ERB's "express, detailed findings" on the validity of the 2016 agreement indicates that the issue was essential to ERB's decision. *See id.*

Plaintiff responds that the validity of the 2016 agreement was not litigated as an element of either ULP charge and was thus superfluous and a mere advisory finding. Plaintiff contends that this issue was not "essential to a final decision," *see Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 970 (D. Or. 2005), because the ERB "could have concluded that SEIU 503 forged

[Plaintiff's] 2016 membership card, but still ruled for SEIU 503 on its ULP claims." Plaintiff

does not explain how the ERB could have ruled for SEIU if it had forged her signature,

considering that the ERB emphasized the threshold necessity of determining the validity of her

signature and the 2016 agreement.

In describing the issues before it, the ERB repeatedly highlighted the necessity of

resolving the validity of the 2016 signature and membership agreement in order to resolve

SEIU's ULP claims. The ERB stated:

> The issues are: (1) did [Plaintiff] and SEIU enter into a *valid dues
> deduction authorization agreement* in March 2016; (2) did
> [Plaintiff] fail to comply with ORS 243.806(6), in violation of
> ORS 243.672(2)(c), by attempting to repudiate a *valid dues
> deduction authorization agreement* with SEIU; (3) did [Plaintiff]
> fail to comply with ORS 243.806(10), in violation of
> ORS 243.672(2)(c), by filing a lawsuit against SEIU asserting
> preempted state law claims for fraud and racketeering rather than
> filing an unfair labor practice complaint to resolve the dispute over
> the *validity of the dues deduction authorization agreement*; and
> (4) should [Plaintiff] be required to pay a civil penalty, pursuant to
> ORS 243.676(4)(a)?

ECF 74-8 at 2-3 (emphases added); *see also* ERB Tr. 3:12-4:3 (ECF 74-7 at 4-5) (same);

ECF 74-10 at 3 ("The issues are: . . . (2) In 2016, did [Plaintiff] authorize dues deductions to be

withheld from her paycheck, and if so, was that authorization valid?").[11] This necessity is further

demonstrated by the fact that one of SEIU's ULP claims was that Plaintiff did not comply with

ORS § 243.806(6) by attempting to repudiate a *valid* dues deduction authorization agreement.

---

[11] Plaintiff appealed the ERB's finding to the Oregon Court of Appeals. The ERB found
that Plaintiff had not committed either ULP alleged by SEIU, and Plaintiff thus appealed only the
ERB's conclusion that the 2016 agreement was valid. Plaintiff cannot persuasively argue both
that the ERB decision on the validity of the 2016 agreement was so important that it needed to be
appealed, but also that it was not actually litigated and essential to the ERB's final judgment.

For the ERB to reach the merits of this claim, it was necessary for it first to determine whether a valid dues deduction authorization agreement existed.

     The ERB explicitly stated that it resolved this dispute over the validity of the 2016 agreement in favor of SEIU: "[W]e conclude that [Plaintiff] signed the 2016 agreement, and that the agreement is valid. Therefore, we resolve the dispute brought under ORS 243.806(10) in SEIU's favor." ECF 74-10 at 15. Although Plaintiff repeatedly argued that a ruling on the validity of the 2016 membership agreement was not necessary to determine if she committed a ULP, *see* ECF 74-2 at 14-15 (motion to dismiss SEIU's ULP); ECF 74-9 at 7-8 (objections to the recommended ruling); ECF 74-11 at 26-35 (opening brief in front of the Oregon Court of Appeals), the ERB and the Oregon Court of Appeals rejected that argument. The Court thus finds that this factor is satisfied.

### c.  Full and Fair Opportunity to Be Heard

     Under Oregon law, "providing a contested case hearing and formal adjudication proceedings meets the threshold for a full and fair opportunity to litigate a question," as required for issue preclusion. *Kolander*, 916 F. Supp. at 1048; *see also Dodd v. Hood River County*, 136 F.3d 1219, 1226 (9th Cir. 1998) (explaining that a "full evidentiary hearing," where, among other things, witnesses could be cross-examined and only sworn testimony was accepted, would "no doubt" have provided "a full and fair opportunity to litigate"); *Hickey v. Settlemier*, 116 Or. App. 436, 439 (1992) (finding a full and fair opportunity to litigate in an administrative proceeding where the plaintiff was represented by counsel and allowed to call and cross-examine witnesses, there was a neutral factfinder, and the final order was subject to judicial review), *rev'd on other grounds*, 318 Or. 196 (1993); *Vilches v. Multnomah Educ. Serv. Dist.*, 2004 WL 1662074, at *8 (D. Or. May 5, 2004) ("[The plaintiff] was represented by counsel, had the opportunity to call witnesses and cross-examine them, and could offer evidence. Absent concrete

evidence to the contrary, this court cannot say that he lacked an adequate opportunity to litigate."), *report and recommendation adopted*, 2004 WL 1661986 (D. Or. July 23, 2004). Further, the parties must have "both a full opportunity and the incentive to contest the point at issue on a record that also was subject to judicial review." *Chavez v. Boise Cascade Corp.*, 307 Or. 632, 635 (1989).

SEIU argues that the ERB proceeding meets these requirements, given its procedural requirements, and that Plaintiff had the same incentive to litigate before the ERB as she does here. Plaintiff responds that she lacked an incentive to fully litigate the validity of the 2016 agreement in front of the ERB, and that the allegations in front of the ERB differ from those in the federal case, such that she was prevented from presenting evidence. Plaintiff does not dispute that the ERB proceeding was a contested case hearing, where both sides were represented by counsel and had the opportunity to present evidence and cross-examine witnesses, nor that the ERB has many strong procedural and evidentiary rules.

Plaintiff first argues that she had no incentive to litigate the validity of the 2016 membership agreement, relying on her argument that its validity was not actually litigated or essential to the final decision. As discussed, the Court finds that the validity of the 2016 agreement was actually litigated and necessary to at least Plaintiff's claim under ORS § 243.806(6) and thus rejects this argument.

Plaintiff also argues that the compensation she could potentially receive in the ERB proceeding—the return of any wrongfully deducted union dues—"is a small part of what she seeks in her current lawsuit," and that this economic disparity creates a difference in incentive. *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1284 (9th Cir. 1986) ("[A]n employee's incentive to litigate an unemployment benefits claim is generally much less than his incentive to

litigate a discrimination claim where generally the stakes are much higher. When the amount in controversy in the first action is much less than the amount in controversy at the second, preclusion would be unfair."), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). The Court notes that in *Mack*, the plaintiff litigated the denial of employment benefits in front of the agency, *then* brought an age discrimination claim in federal court, and the court's decision on preclusion depended in part on the fact that the ALJ made no specific findings about the age discrimination claim and the record did not show any evidence presented on the issue. *Id.* at 1283-84. In this case, on the other hand, the ALJ made specific findings about the validity of the 2016 agreement, which is an issue in all Plaintiff's claims in this litigation. Moreover, Plaintiff had already brought this case, which was stayed pending litigation of the ERB proceeding. The Supreme Court has noted in allowing the offensive use of issue preclusion: "If a defendant in the first action is sued for small or nominal damages, he may have little incentive to defend vigorously, *particularly if future suits are not foreseeable*." *Parklane*, 439 U.S. at 330 (emphasis added).

Despite the difference in amounts in controversy, Plaintiff had a strong incentive to litigate the validity of the 2016 agreement in the ERB proceeding. Where a party knows that a determination may affect future adjudications, it has the incentive to fully litigate. *See id.* at 330 (noting that the foreseeability of future suits affects a party's incentive to litigate); *cf. Kolander*, 916 F. Supp. at 1048 (explaining that plaintiff knew that her future benefits "were affected by the hearing officer's determination," and thus "her motivation to appeal the determination was plainly established by the agency's denial of the 1995 deductions"). Plaintiff knew that she faced the risk of the Court finding that the ERB's decision had preclusive effect. *See Trees*, 574 F. Supp. 3d at 870 ("The parties dispute whether that factual determination should

be given preclusive effect in this Court, and the undersigned will, at the appropriate time, decide that issue."); ECF 38 at 11-19 (opposing SEIU's motion for a stay and arguing that the ERB's decision will not have preclusive effect); ECF 48 (unsuccessfully moving for a TRO stopping the ERB proceeding and arguing that SEIU plans to argue that the ERB proceeding has preclusive effect). Moreover, as discussed, the ERB made it clear that it considered the validity of the 2016 agreement to be a critical threshold issue. Given the known possibility that ERB's factual determination could "significantly limit or simplify this case," *Trees*, 574 F. Supp. 3d at 870, Plaintiff had the incentive to fully litigate the validity of the 2016 agreement in the ERB proceeding. The Court rejects Plaintiff's argument to the contrary.

Finally, Plaintiff contends that the allegations before the ERB differed from those in this case, such that Plaintiff could not present evidence that she would have relied on in this case.[12] Specifically, she cites the ALJ's ruling that proposed testimony from other employees who have experienced deductions by SEIU would be irrelevant. *See* ECF 83-1 at 2 ("I have determined that their testimony is not relevant to the issues set for hearing. [Plaintiff] reserves the right, however, to call these witnesses on rebuttal if the relevance of their testimony is established."). The rules of evidence that the ERB follows in its proceedings set forth that "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded." Or. Admin. R. 115-010-0050(2). This rule mirrors the Federal Rules of Evidence, which mandate that irrelevant evidence is inadmissible.

---

[12] Plaintiff also argues that "the burden of proof at the Board is 'substantial evidence,' and review of the Board's findings is deferential. These procedural realities strongly contribute to the unfairness that would arise if the Board's opinion was given preclusive effect." The ERB's finding, however, was that "a *preponderance of the evidence* establishes that [Plaintiff] signed the 2016 membership agreement, and that it was not forged." ECF 74-10 at 11 (emphasis added). Plaintiff seems to be referring to the Oregon Court of Appeals' standard of review of the ERB's order, which is "for substantial evidence, substantial reason, and legal error." *SEIU Local 503*, 330 Or. App. at 312 (citing ORS § 183.482(8)). Regardless, this standard of review does not affect Plaintiff's opportunity to be heard.

Fed. R. Evid. 402. Further, the Oregon Court of Appeals affirmed that the evidence was "properly excluded, because it was not relevant to the question of whether [Plaintiff] signed the 2016 agreement, and the evidence related to different bargaining units, different organizers, and different devices." *SEIU Local 503*, 330 Or. App. at 319. Plaintiff does not explain how witnesses who were found to be irrelevant by the ALJ and the Oregon Court of Appeals would be relevant in this case. Therefore, Plaintiff had the opportunity to present witnesses, as required for a full and fair opportunity to litigate.

Plaintiff was provided with a contested case hearing in which she was represented by counsel and called and cross-examined witnesses, presided over by an ALJ, where the final order was subject to judicial review. Plaintiff also had an incentive to fully litigate in that proceeding. The Court thus finds that Plaintiff had a full and fair opportunity to be heard during the ERB proceeding, and this factor is met.

### d. Same Party

There is no dispute that Plaintiff was a party to the ERB proceeding. This factor is therefore met.

### e. Type of Proceeding

Oregon courts have enumerated four factors to consider in deciding whether the prior proceeding is the type of proceeding to which it will give preclusive effect: "(1) whether the administrative forum maintains procedures that are 'sufficiently formal and comprehensive'; (2) whether the proceedings are 'trustworthy'; (3) whether the application of issue preclusion would 'facilitate prompt, orderly and fair problem resolution'; and (4) whether the 'same quality of proceedings and the opportunity to litigate is present in both proceedings.'" *Nelson*, 318 Or. at 104 n.4 (quoting *State v. Ratliff,* 304 Or. 254, 258 (1987) (en banc); *Boise Cascade Corp.,* 307 Or. at 635; *N. Clackamas Sch. Dist. v. White*, 305 Or. 48, 52 (1988) (en banc)).

SEIU contends that the Oregon Supreme Court has held that ERB proceedings are the "type of proceeding to which [Oregon] court[s] will give preclusive effect." *Washington Cnty. Police Officers Ass'n v. Washington County*, 321 Or. 430, 437 (1995). The Court does not read this case as broadly holding that all ERB proceedings are awarded preclusive effect. In *Washington County*, the question was whether the ERB could apply issue preclusion in one of its own proceedings based on one of its prior decisions. The Oregon Supreme Court explained: "The same quality of proceedings and opportunity to litigate is present in both proceedings. If the incentive to litigate the question is substantially the same, the procedural requisites for application of the issue preclusion rule would appear to exist." *Id.* at 437 (quoting *N. Clackamas Sch. Dist.*, 305 Or. 48 at 52). This explanation does not support that all ERB proceedings have preclusive effect for later federal court proceedings, and thus the Court turns to the four factors set out in *Nelson*.

Plaintiff does not argue that the ERB proceeding was not "trustworthy," but contends that it was not "sufficiently formal and comprehensive" and thus did not provide the "same quality of proceedings and the opportunity to litigate" as in federal court. Plaintiff compares this case to *Ratliff*, in which the Oregon Supreme Court held that an administrative DMV license suspension hearing did not have preclusive effect in a later criminal proceeding. 304 Or. at 260. The Oregon Supreme Court explained that although the license suspension hearing was a "contested case," such "[c]ontested case hearings vary greatly in formality, complexity and the parties' opportunities and inclinations to litigate the issues." *Id.* at 258. The court noted that it had little on the record to explain the character of license suspension hearings, but extrapolated based on statutes, administrative rules, and the particular circumstances of Ratliff's case. *Id.* at 258-59. In such hearings, the person whose license may be suspended "may be represented by an attorney,"

and "[t]he proceedings are brief, usually limited to the testimony of two witnesses." *Id.* at 259. Further, the DMV is not represented by an attorney, but "is represented in a way by the hearings officer," who "may or may not be a lawyer." *Id.* "The litigation is not conducted as it would be in court with two adversary parties and a neutral judge. Rather, there is one party advocating a position before a decision-maker who also has the responsibility of developing a record that will include evidence against the party." *Id.* Accordingly, this "administrative procedure can impose only limited sanctions and is designed to provide a simple and expeditious decision." *Id.* at 260. A criminal trial, on the other hand, "is by constitution and statute more formal and hence more cumbersome." *Id.*

The ERB proceeding at issue here suffers from none of the deficiencies of the hearing in *Ratliff*. As discussed, Plaintiff was able to present multiple witnesses and the hearing was an adversarial proceeding before a neutral factfinder. Moreover, the current proceeding is civil, not criminal. Although the ERB proceeding did not provide an *identical* forum as a federal court, it has all the hallmarks of a sufficiently formal and comprehensive proceeding. Thus, this factor is met.

### f.   Fairness Considerations

Plaintiff argues that, even if the enumerated factors for issue preclusion are met, fairness dictates that issue preclusion should not apply. Even though courts repeatedly have applied issue preclusion to state agency proceedings, Plaintiff argues that its application would violate her constitutional and statutory rights.

First, Plaintiff argues, as she does in opposing SEIU's motion for leave to supplement its answer, that applying issue preclusion here would violate her Seventh Amendment right to a jury trial. As discussed, this argument lacks merit.

Second, Plaintiff contends that issue preclusion would violate her First Amendment right to seek redress of grievances through a court. She cites *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983), in which the National Labor Relations Board ("NLRB") in an administrative proceeding *ordered* an employer to *withdraw its state-court complaint*. *Id.* at 737. The Supreme Court vacated this order, explaining that the NLRB "may not *halt the prosecution of a state-court lawsuit*, regardless of the plaintiff's motive, unless the suit lacks a reasonable basis in fact or law." *Id.* at 748 (emphasis added). With issue preclusion, an agency does not directly halt the prosecution of a lawsuit. Instead, a court applies preclusion to an issue before it, which may or may not end the entire proceeding or dispose of a claim (claim preclusion, on the other hand, will dispose of a claim but also may not dispose of an entire proceeding). Plaintiff does not cite any case in which a court has held that issue preclusion violates the First Amendment right to redress grievances. The Court thus finds that the First Amendment does not bar the application of issue preclusion in this case.

Finally, Plaintiff argues that applying issue preclusion would deny her recourse in a forum separate than the state government that is allegedly violating her rights, in violation of 42 U.S.C. § 1983. She argues that a state administrative proceeding is not a substitute for a federal court case, and that SEIU has attempted to set a "preclusion trap." SEIU responds by noting that the U.S. Supreme Court has affirmed that issue preclusion applies in § 1983 cases when issues have been litigated in state courts. *See Allen v. McCurry*, 449 U.S. 90, 103-04 (1980) ("[N]othing in the language or legislative history of § 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights."). Further, the Ninth Circuit has held

that state administrative proceedings are also given preclusive effect in cases brought under § 1983. *See Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994) ("[A]s a matter of federal common law, federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983.").

The case Plaintiff cites in support of her "preclusion trap" argument, *Knick v. Township of Scott*, invalidated an exhaustion requirement for constitutional claims under the Takings Clause. 588 U.S. 180, 185 (2019). Before *Knick*, the Supreme Court had held that property owners cannot bring a federal takings claim in federal court until a state court has denied their claim for just compensation under state law. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). The Court in *Knick* noted that *Williamson County* created a "preclusion trap" because "a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit." *Knick*, 588 U.S. at 184. Such a situation, the Court explained, would violate the Civil Rights Act of 1871, which "guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials, and the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under § 1983." *Id.* at 185 (emphasis in original) (cleaned up).

Plaintiff argues that ORS § 243.806(10) creates a similar exhaustion requirement that violates the right to a federal forum guaranteed by § 1983, citing the ERB's conclusion that "ORS 243.806(10) vests this Board with exclusive jurisdiction to hear dues-deduction disputes." ECF 74-10 at 7. As SEIU notes, however, this statute does not create an exhaustion requirement for § 1983 claims. The statute merely requires that disputes about the "existence, validity or revocation of an authorization for the deduction[]" of union dues must be resolved through an ULP proceeding in front of the ERB. ORS § 243.806(10)(a). This does not require that

*constitutional* claims are resolved by the ERB, and thus Plaintiff has not been deprived of her § 1983 rights. Therefore, issue preclusion fairly applies in this case, as it does in other § 1983 claims.

The Court applies issue preclusion to the ERB's conclusions that Plaintiff voluntarily signed the 2016 agreement and that agreement was a valid membership agreement between Plaintiff and SEIU. The resolution of these issues determines all of Plaintiff's claims against SEIU for purposes of SEIU's motion for judgment on the pleadings. All of Plaintiff's claims depend on the allegation that SEIU forged her signature on the 2016 membership agreement and thus there was no valid membership agreement. Taking the rest of Plaintiff's allegations in her complaint as true, and construing these allegations in the light most favorable to Plaintiff, she fails to state any claims against SEIU. The Court, therefore, declines to reach the parties' remaining arguments.

## CONCLUSION

The Court GRANTS SEIU's Motion for Leave to File Supplemental Answer, ECF 73. The Court also GRANTS SEIU's Request for Judicial Notice, ECF 75. Finally, the Court GRANTS SEIU's Motion for Judgment on the Pleadings, ECF 72. The Court dismisses this case with prejudice.

**IT IS SO ORDERED**.

DATED this 24th day of January, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge